# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| David Edward Cavalieri,<br>    Petitioner, | )<br>)<br>) | |
| v. | )<br>) | 1:18cv356 (LMB/JFA) |
| Commonwealth of Virginia<br>    Respondent. | )<br>)<br>) | |

## MEMORANDUM OPINION

David Cavalieri ("Cavalieri" or "petitioner") , a Virginia inmate proceeding pro se, has

filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, in which he challenges his

conviction entered in the Circuit Court of Loudoun County for the first-degree murder of his

girlfriend Stacie Harper ("Harper") [Dkt. No. 1]. Respondent, the Commonwealth of Virginia

("the Commonwealth"), has filed a motion to dismiss and Rule 5 answer, along with a

supporting brief. [Dkt. Nos. 28–30]. Cavalieri received the notice required by Local Rule 7(K)

and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed an opposition to the

Commonwealth's submission. [Dkt. Nos. 31, 36–37]. For the reasons that follow, the

Commonwealth's motion to dismiss will be granted.

## I. Background

On February 17, 2010, a jury convicted Cavalieri of the first-degree murder of Harper

and recommended a sentence of life imprisonment, which the trial court imposed on May 19,

2010. [Dkt. No. 30-1]. In addition to hearing about how investigators found Harper's body in

Cavalieri's residence, the jury heard testimony from Investigator Mark McCaffrey, who

conducted the interview with Cavalieri. The tape of that interview was played for the jury. In that

interview Cavalieri explained that the body police found in his apartment was Harper's and that

he had killed her two weeks earlier. [2/1/10 Trial Tr. at 70, 73]. As the tape revealed, when McCaffrey asked, "How did it get to what it led up to?" [Resp't Ex. 7, at 32]. Cavalieri replied, "What are you talking about . . . have you, you found her I take it?" [Id. at 33]. Cavalieri explained that while in a self-described "drunken stooper," he grabbed her "by the hair out of the back of the chair," and "I remember choking her." [Id.]. McCaffrey followed up, "is that how she died?" [Id.] Cavalieri responded, "Yeah I choked her." [Id.]. Cavalieri further recounted that "[w]e were both drinking, got into an argument, back and forth . . . and then the moment I just snapped, and that was that." [Id. at 36–37]. Cavalieri added that after smoking a cigarette, he washed Harper's body, and then wrapped it in a shower curtain, a towel, and black plastic bags. [Id. at 37–40, 45]. After about a week, he put the body underneath the bed because, he said, "if somebody comes over this isn't gonna be good," and, a week after that, he decided to "just turn this whole thing over to God" by "go[ing] to the hospital, and see[ing] what happens," instead of killing himself, which had been his initial plan. [Id. at 47].

Dr. Shane Chittenden, the medical examiner who performed Harper's autopsy, testified at trial about the cause of death. [2/4/10 Trial Tr., at 140, 143]. First, he explained that Harper received numerous contusions resulting from blunt-force trauma at or near the time of death (including bruises on her arms, lips, eyes, and the underside of her scalp) and ultimately died by strangulation. [Id. at 154–60, 166–69, 177]. He also testified that her hyoid bone was broken in two places—supporting his strangulation diagnosis—and that "a significant amount of force is required to break that bone." [Id. at 163–64]. When asked about marks on her neck, he stated that they could have been the result of decomposition or left by a ligature. [Id. at 178–79]. But he could not confirm whether the strangulation was manual or by ligature: "There is no question that she was strangled and that is the cause of her death, but I didn't find specific evidence that

pointed to one particular modality." [Id. at 180–81]. He further opined that if, hypothetically, she had been strangled with twine being placed around her neck, "death would occur in a matter of minutes." [Id. at 170–71].

During closing arguments, defense counsel urged the jury to find that the evidence did not support a conviction for first-degree murder, which, in Virginia, requires premeditation and malice. [Id. at 251–77]. He argued that Cavalieri had strangled Harper manually, in a "heat of passion," while intoxicated. [Id. at 257–62, 268–70, 274]. The jury rejected Cavalieri's defense and found him guilty of first-degree murder. [2/17/10 Trial Tr., at 11].

## II. Post-Conviction Procedural History

The only issue Cavalieri raised in his initial direct appeal was the trial court's denial of his motion to suppress. Because appointed appellate counsel did not file the transcripts necessary for the appellate court to evaluate the trial court's ruling, the appeal was denied. [Rec. No. 1160-10-4, 12/29/10 Order]. The Virginia Supreme Court refused the petition for appeal on August 25, 2011. [Rec. No. 110559, 8/25/11 Order].

Cavalieri then sought habeas relief, in which he raised the following 28 claims:

(A) Appellate counsel was ineffective for failing to provide the appellate court with the transcripts necessary to review the trial court's ruling on the motion to suppress;

(B) The conviction was obtained by the prosecution introducing evidence obtained during an unconstitutional search and seizure;

(C) The conviction was obtained by the prosecution's unconstitutional failure to disclose evidence in its possession that was favorable to Cavalieri;

(D) The evidence was insufficient to convict Cavalieri of first-degree murder;

(E)(1)(i) Fourteen claims of ineffective assistance of trial counsel for: failing to litigate adequately the motion to suppress evidence;

3

(E)(1)(ii) Failing to cross-examine competently the Commonwealth's witnesses to highlight inconsistent testimony;

(E)(2)(i) Failing to prepare for and investigate Cavalieri's case properly;

(E)(2)(ii) Failing to interview Cavalieri adequately before the suppression hearing, making counsel ill-prepared to question him;

(E)(2)(iii) Failing to make Cavalieri copies of transcripts and briefs;

(E)(2)(iv) Failing to allow Cavalieri to see or question the Commonwealth's evidence before trial;

(E)(3) Failing to use a video counsel took of Cavalieri's condo forty-eight hours after his arrest to impeach police testimony;

(E)(4) Failing to call a mental health professional to testify as an expert witness;

(E)(5) Ineffectively and incompetently cross-examining the medical examiner about Harper's cause of death;

(E)(6) Failing to introduce evidence demonstrating a loving relationship between Harper and Cavalieri;

(E)(7) Failing to preserve for appeal a motion to strike based on the sufficiency of the evidence, and for poorly and ineffectively constructing the motion to set aside the verdict;

(E)(8) Failing to subpoena seven witnesses to testify;

(E)(9) Denying Cavalieri the right to testify in his own defense after he told counsel four times he wanted to testify;

(E)(10) Failing to disclose the defense witness list until the day of trial and then calling only one of those witnesses to testify;

(E)(11) Waiting to interview several witnesses until two weeks before the trial not preparing any of the witnesses to testify;

(E)(12) Failing to call three witnesses who would have testified about Cavalieri's likeable demeanor and daily alcohol purchases;

(E)(13) Failing to call three witnesses whose testimony would have mitigated the negative emails introduced by the prosecution;

(E)(14) Failing to challenge the relevance and credibility of a "Jiu-Jitsu Sensei,"[1] who testified as an expert for the Commonwealth;

(F) The conviction was obtained by the prosecution with its knowing use of false testimony in violation of Cavalieri's Fifth Amendment right to due process and the ruling in Napue[2];

(G) The search warrant was not supported by probable cause, the officers conducted an illegal search before obtaining the warrant, and the officers lied in the affidavit supporting the warrant;

(H) The trial court improperly admitted evidence in violation of the Fourth, Fifth, and Sixth Amendments;

(I) Cavalieri's right to due process under the Fourteenth Amendment was violated by the accumulation of errors, gross negligence by defense counsel, and incredible testimony by material witnesses for the Commonwealth;

(J) The trial court issued two faulty jury instructions explaining the Commonwealth's burden of proof and the elements of manslaughter;

(K) The conviction was obtained by the prosecution's use of evidence gained during an unlawful arrest, which resulted from an illegal search.

[Rec. No. 73225, 4/5/12 Habeas Pet'n; 5/8/12 Suppl. Habeas Pet'n; Resp't Ex. 3, at 2–4].

On February 1, 2013, after the Commonwealth conceded Cavalieri's claim that appellate counsel prevented him from exhausting his appellate remedies, the state habeas court granted Cavalieri relief to petition the Court of Appeals of Virginia for permission to seek a delayed appeal [Resp't Ex. 3, at 5], and dismissed without prejudice the remainder of Cavalieri's claims,

---

[1] Cavalieri refers to the expert witness, Fernando Yamasaki, as a "Jiu-Jitsu Sensei." [Rec. No. 73225, May 2012 Suppl. Habeas Pet'n, at 21]. Although Yamasaki testified at trial that he teaches Brazilian jiu-jitsu in addition to judo, wrestling, and law enforcement self-defense, the prosecution tendered him only as "an expert in the martial art of Judo." [2/4/10 Trial Tr., at 107–08, 112].

[2] Napue v. People of the State of Ill., 360 U.S. 264, 269 (1959) (acknowledging that "[t]he principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness.").

cautioning that if he sought habeas review again, he would be limited to those claims and any new ones that should arise on direct appeal. [Id. at 6].

In Cavalieri's second direct appeal, the only issue raised by appointed counsel was that the trial court erred in denying Cavalieri's motion to suppress. [Rec. No. 0751-13-4, Def.'s Pet'n for Appeal, at 1]. Specifically, counsel contested the trial court's finding that Cavalieri had consented to the search of his home. [Id. at 16–22]. Cavalieri also submitted numerous pro se filings attempting to raise other alleged trial errors, which, he said, appointed appellate counsel refused to include in the appellate brief. [Rec. No. 0751-13-4, 8/8/13 Order]. The Court of Appeals of Virginia did not allow Cavalieri to amend his petition for appeal through his pro se filings, and concluded that the record supported the trial court's finding that Cavalieri had expressly consented to an unlimited search of his home, thus rendering the search lawful. [Rec. No. 0751-13-4, 11/6/13 Order]. Specifically, the Virginia Court of Appeals affirmed the trial court's decision, after finding that the record established the following facts:

> On the morning of April 15, 2009, [Cavalieri] called the police from his residence. The call was initially dispatched as a stabbing or a shooting. Deputy James Gutshall was the first to arrive at [Cavalieri's] apartment. The door was partially open, and the officer heard someone talking inside. Gutshall pushed open the door and saw [Cavalieri] pacing while talking on a telephone. Concerned that someone was injured based upon the information he had received, Gutshall asked [Cavalieri] to display his hands and put down the phone. When Gutshall asked [Cavalieri] if anyone else was in the residence, [he] stated someone else lived there but was not at home.
>
> Sergeant Linda Cerniglia also arrived at [Cavalieri's] apartment. [Cavalieri] displayed his injuries and stated he had been cut or stabbed. [He] had cuts on his neck and abdomen. He stated he had inflicted the neck wounds and then when pointing to his abdominal wounds, he initially stated he had not inflicted those. [He] then remarked that he did not want "anyone to get in trouble" and claimed he had done "th[o]se too."
>
> At the suppression motion hearing, Gutshall testified he asked [Cavalieri]: "Well, do you mind if we look around then?" [Cavalieri] responded, "no, go ahead." Although these remarks were not in the initial police report, the trial court specifically found the officer's testimony credible and rejected [Cavalieri's] denial that the officer had asked for consent to search.

The officers conducted an initial sweep of the apartment looking for other people – either suspects or victims. At first, the officers found no one. [Cavalieri] was transported to the hospital, and Deputy David Hill remained behind to secure the scene. Hill was aware that officers had not looked under the bed in one of the bedrooms during the initial search. Approximately two hours after the original search, Hill looked under the bed and discovered a body wrapped in black plastic.

[Resp't Ex. 4, at 2].

Cavalieri, still represented by appointed counsel, appealed to the Supreme Court of Virginia, asserting that the appellate court erred by upholding the trial court's ruling on the motion to suppress. [Rec. No. 140310, 2014 Pet'n for Appeal]. The Supreme Court of Virginia refused Cavalieri's petition for appeal on July 18, 2014. [Rec. No. 140310, 7/18/14 Order]. Cavalieri filed a pro se petition for rehearing, which the Supreme Court of Virginia denied on September 18, 2014. [Rec. No. 140310, 9/18/14 Order].

On July 16, 2015, Cavalieri moved a second time for state habeas relief, contending that that his trial and direct appeal suffered from numerous constitutional deficiencies:

I. Appellate counsel was ineffective for failing to present claims that Cavalieri told counsel to raise and for drafting an appellate brief rife with factual errors;

II. Cavalieri's Fourteenth Amendment rights to due process and equal protection were violated when the appellate court did not allow him to submit a pro se amended petition for appeal;

III. The Commonwealth knowingly presented false testimony in violation of Cavalieri's Fifth Amendment right to due process and the law under Napue;

IV. Cavalieri's conviction was obtained using evidence gathered during an unconstitutional search and seizure;

V. Cavalieri's Fourteenth Amendment right to due process was violated because the trial court denied the motion to suppress;

VI. The prosecution unconstitutionally failed to disclose evidence in its possession that was favorable to Cavalieri;

VII. The search warrant was obtained without probable cause and without being the product of an independent source in violation of Cavalieri's Fourteenth Amendment due process and equal protection rights;

VIII. Cavalieri's Fourteenth Amendment right to due process was violated when the jury was given erroneous jury instructions;

IX. Cavalieri's Sixth Amendment right to effective assistance of trial counsel was violated as follows:

(1) Trial counsel failed to present a heat-of-passion affirmative defense properly, fully, or effectively;

(2) Trial counsel failed to object to, and to move to vacate the verdict based on, jury instructions that contained impermissible burden-shifting presumptions that operated to relieve the Commonwealth of its burden of persuasion;

(3) Trial counsel ineffectively litigated Cavalieri's Fourth Amendment claim, which prevented evidence from being excluded at trial;

(4) Trial counsel failed to object to the Commonwealth's asserted inference that Harper died by strangulation with twine;

(5) Trial counsel failed to object to the Commonwealth's proffer that Cavalieri had been pacing back and forth behind the couch;

(6) Trial counsel failed to introduce evidence of Cavalieri's drinking habits, including omitting proof of alcoholism;

(7) Trial counsel deficiently investigated the alleged crime and failed to prepare adequately for trial;

(8) Trial counsel failed to challenge the relevance and credibility of the Commonwealth's jiu-jitsu expert witness;

(9) Trial counsel failed to call character witnesses;

(10) Trial counsel failed to call a mental health professional to testify as an expert;

(11) Trial counsel ineffectively cross-examined the medical examiner to convince the jury that Harper died by manual strangulation;

(12) Trial counsel failed to introduce evidence demonstrating a loving relationship between Harper and Cavalieri;

8

(13) Trial counsel failed to preserve for appeal a motion to strike and ineffectively argued a motion to set aside the verdict, each based on insufficiency of the evidence;

(14) Trial counsel failed to subpoena seven witnesses to testify at trial;

(15) Trial counsel did not allow Cavalieri to testify, although he told counsel four times that he wanted to;

X. Cavalieri's Sixth Amendment and Fourteenth Amendment rights were violated by the cumulative effect of trial errors, false testimony, and the ineffective assistance of counsel.

XI. The evidence was insufficient to convict Cavalieri of first-degree murder.

[Rec. No. 95313, 2015 Habeas Pet'n; Resp't Ex. 5, at 2–5]. The state habeas court reached the merits only as to Cavalieri's ineffective assistance of counsel claims, and concluded that the remaining claims were procedurally barred, overly conclusive, successive, or uncognizable on habeas review. [Resp't Ex. 5]. For the ineffective assistance claims, the state habeas court concluded that Cavalieri had not satisfied the requirements of Strickland v. Washington, 466 U.S. 668 (1984). [Id. at 12–27]. Cavalieri appealed that decision, but the Supreme Court of Virginia refused his appeal on October 26, 2017, and denied his petition for rehearing on February 1, 2018. [Rec. No. 160885, 10/26/17 Order, 2/1/18 Order].

On March 14, 2018, Cavalieri timely filed the pending petition for a writ of habeas corpus under 28 U.S.C. § 2254. [Dkt. No. 1]. The petition consists of a very confusing and improperly numbered 42-page submission, with the substantive component beginning on page "1" but ending on page "93." The table of contents lists arguments on pages, such as 34 and 41, that do not exist, resulting in incomplete or wholly absent arguments that cannot be pieced together. Similarly, Cavalieri states that he outlined 14 grounds of ineffective assistance of trial counsel in a 10-page attachment, "Exhibit G," which begins on page "G-1" and supposedly ends

on page "G-24" which, is likewise missing relevant pages of argument in between. Although a court must liberally construe pro se filings, this principle is not unlimited. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "District judges are not mind readers," and because the Court cannot evaluate arguments that are not before it, only the claims which can be deciphered from the four corners of the petition, its attached exhibits, and the response to the Commonwealth's motion to dismiss will be considered. See id.

Given the confusing way in which this petition is written, the Court has construed the grounds for Cavalieri's petition as follows:

(1) The Court of Appeals of Virginia violated Cavalieri's due process rights by denying his request to submit pro se filings;

(2) Appellate counsel provided constitutionally ineffective assistance;

(3) Trial counsel provided constitutionally ineffective assistance by:

(A) failing to present effectively a heat of passion defense to negate the first-degree murder elements of malice and premeditation;

(B) failing to object to several jury instructions and later failing to move to vacate the verdict because the instructions contained impermissible burden shifting away from the Commonwealth;

(C) ineffectively arguing a motion to suppress;

(D) failing to object to the testimony of a Jiu-Jitsu Sensei, who the Commonwealth put forth as an expert witness;

(E) ineffectively cross-examining the medical examiner about Harper's cause of death;

(F) failing to introduce evidence to counter the Commonwealth's evidence of a longstanding bad relationship between Cavalieri and Harper;

(G) failing to preserve properly a motion to strike and submitting a poorly drafted motion to set aside the verdict based on insufficiency of the evidence to support a conviction for first-degree murder; and

(H) interfering with Cavalieri's constitutional right to testify on his own behalf;

(4) Cavalieri's Sixth and Fourteenth Amendment rights were violated by the cumulative effect of ineffective assistance of trial counsel; and

(5) Cavalieri was denied a constitutional right to a fair trial because the prosecution knowingly used false and perjured testimony.

[Dkt. No. 1].

### III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), if a state court has adjudicated a petitioner's claim on the merits, a federal court may grant a petition for a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When § 2254(d) applies, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (internal quotation marks and citation omitted). Additionally, fact determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e).

A habeas petitioner is considered to have procedurally defaulted his federal habeas claim "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal." See Woodfolk v. Maynard, 857 F.3d 531, 543 (4th Cir. 2017) (internal quotation

marks and citation omitted). A state procedural rule is "adequate" if it is regularly or consistently applied. Bostick v. Stevenson, 589 F.3d 160, 164 (4th Cir. 2009). And a rule is "independent" if it does not depend on a federal constitutional ruling. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006). When this kind of procedural default occurs, it may be excused to allow federal review only if the petitioner shows (1) cause for the default and resulting prejudice, or (2) that the failure to evaluate the claim will result in a fundamental miscarriage of justice. Id.

Additionally, claims of ineffective assistance of counsel are evaluated under Strickland's two-factor test. Grueninger v. Dir., Va. Dep't of Corr., 813 F.3d 517, 524 (4th Cir. 2016). To prevail on such a claim, a petitioner must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance was "prejudicial to the defense." See Garza v. Idaho, 139 S. Ct. 738, 744 (2019) (citing Strickland, 466 U.S. at 692). An attorney's performance is deficient if it "'fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" Christian v. Ballard, 792 F.3d 427, 443 (4th Cir. 2015) (quoting Strickland, 466 U.S. at 688). This Court's review is doubly deferential because "[it] defer[s] to the state court's judgment, and under clearly established Supreme Court precedent, the state court defers to counsel's presumptive 'sound trial strategy.'" Morva v. Zook, 821 F.3d 517, 528 (4th Cir. 2016) (quoting Strickland, 466 U.S. at 689). Accordingly, when § 2254(d) applies to a Strickland claim, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011).

### IV. Analysis

### A. Grounds (1), (3)(A), and (5): Procedural Default

The Commonwealth argues that grounds (1), (3)(A), and (5) are exhausted but unreviewable because they have been procedurally defaulted by the state habeas court's dismissal of those claims under an independent and adequate state procedural rule. [Dkt. No. 30, Resp't Br. at 17–21].

First, the Commonwealth argues that grounds (1) and (5) are procedurally defaulted because the state habeas court invoked the rule of Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974), to dismiss plaintiff's claims in ground (1) (that the Court of Appeals of Virginia violated Cavalieri's due process rights by denying his request to submit pro se filings) and ground (5) (that Cavalieri was denied a constitutional right to a fair trial because the prosecution knowingly used false testimony in violation of Napue). [Dkt. No. 30, Resp't Br. at 17].

In Virginia habeas proceedings, Slayton bars petitioners from bringing non-jurisdictional claims that could have been brought on direct review. 205 S.E.2d at 682. The state habeas court concluded that Cavalieri's claim directed at his inability to submit pro se submissions on direct appeal "allege[s a] nonjurisdictional ground[] of trial court error that could have been brought on direct appeal. As such, [it is] not cognizable on habeas review under the rule in Slayton." [Resp't Ex. 5, at 7]. Next, the state habeas court turned to Cavalieri's allegation that his right to due process was violated when the prosecution knowingly used false testimony to secure his conviction; holding that "petitioner possessed the information upon which he bases his Napue claim prior to trial and his direct appeal. Accordingly, petitioner's Napue claim is non-cognizable under Slayton." [Id.]. Because Virginia's Slayton rule is an independent and adequate state procedural rule, see Lewis v. Wheeler, 609 F.3d 291, 308–9 (4th Cir. 2010), this Court may review the claims dismissed under that rule only if Cavalieri "can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice." Hedrick, 443 F.3d at 359.

In his opposition to the Commonwealth's motion to dismiss, Cavalieri contends that the state court's failure to evaluate his prosecutorial misconduct claim was a fundamental miscarriage of justice. [Dkt. No. 37, Pet'r Opp'n Br., at 4–5]. A fundamental miscarriage of justice exists if "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." Dretke v. Haley, 541 U.S. 386, 393 (2004) (internal quotation marks and citation omitted). To succeed on this claim Cavalieri must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." See Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added); see also Hayes v. Carver, 922 F.3d 212, 216 (4th Cir. 2019). But Cavalieri has not produced any new evidence. Instead, he says that Appendix E, which is an annotated transcript of the suppression hearing, reveals eighty-four materially false statements made by the prosecution. [Dkt. No. 1-6, Pet'r App. E]. This evidence does not qualify as new evidence, and his attempt to rehash evidence already in the record is inadequate to open the gate to review this procedurally defaulted claim. See Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 588–89 (E.D. Va. 2006) (rejecting a fundamental miscarriage of justice argument when petitioner "introduce[d] nothing new, but present[ed] instead a selective version of the facts and omit[ted] those facts belying his actual innocence claim").

As for his claim related to pro se submissions on direct appeal, instead of arguing that cause and prejudice exist for the procedural default, Cavalieri insists that the state habeas court misapplied Slayton because he did, in fact, raise this claim on direct review. [Dkt. No. 1, § 2254 Pet'n, at 13–14; Dkt. No. 37, Pet'r Opp'n Br., at 4]. But "[a] federal habeas court does not have license to question a state court's finding of procedural default or to question whether the state court properly applied its own law." Woodfolk v. Maynard, 857 F.3d 531, 543 (4th Cir. 2017)

(internal quotation marks and citations omitted). Because the <u>Slayton</u> rule is an independent and adequate state procedural bar, <u>see</u> <u>Lewis</u>, 609 F.3d at 309, and Cavalieri presents no argument to excuse the procedural default, this Court is without authority to review Cavalieri's underlying constitutional claim, <u>see</u> <u>Wright v. Angelone</u>, 151 F.3d 151, 159–60 (4th Cir. 1998) (concluding that a federal habeas court could not review petitioner's challenge to a state habeas court's application of procedural default rule, even when petitioner argued that the state habeas court should not have applied <u>Slayton</u> because petitioner presented the claim on direct appeal).

Finally, the Commonwealth contends that ground 3(A)—Cavalieri's claim that trial counsel was ineffective for failing to present an effective heat-of-passion defense—is also procedurally defaulted because the state habeas court concluded that it was a successive claim not subject to review. [Dkt. No. 30, Resp't Br. at 17]. Specifically, the state habeas court explained that:

> On February 1, 2013, this Court entered an Order granting petitioner a belated appeal to the Court of Appeals of Virginia and dismissing the remainder of his habeas claims:
>
>> without prejudice to the petitioner's right to file a subsequent petition for writ of habeas corpus limited to the grounds assigned in his Petition for Writ of Habeas Corpus, filed on April 5, 2012, and his Petition in Support of Writ of Habeas Corpus, filed on May 8, 2012, and any additional ground that may arise during the progress of his case on direct appeal.
>
> This provision of the Court's Order is consistent with Code § 8.01-654(B)(2), which bars successive habeas petitions.
> In claim IX(1) [Ground 3(A)], petitioner alleges trial counsel was ineffective for failing to 'properly, fully, or effectively' present a 'heat of passion' defense at trial. . . .
> Th[is] ground[] w[as] not raised in petitioner's April 5, 2012 or May 8, 2012 habeas filings. Moreover, it is plain that petitioner was aware of the factual bases of th[is] claim[] at the time of his prior habeas petition, because [it] arise[s] from trial counsel's strategic decisions at trial, where Petitioner was present. Accordingly, th[is] claim [is] barred by Code § 8.01-654(B)(2) and this Court's February 1, 2013 Order.

[Resp't Ex. 5, at 11–12].

Cavalieri argues that his default is excused under <u>Martinez v. Ryan</u>, 566 U.S. 1, 14 (2012), which holds that the absence, or inadequate assistance, of counsel during initial habeas proceedings may establish cause for procedurally defaulting a claim of ineffective assistance at trial that is presented in a second habeas proceeding. [Dkt. No. 1, § 2254 Pet'n, at 43]. To defeat the default, Cavalieri's underlying claim of ineffective assistance of trial counsel must be "substantial," that is, have "some merit." <u>Id.</u>

Because Cavalieri has not demonstrated a substantial claim of ineffective assistance based on trial counsel's failure to present an adequate heat-of-passion defense, he cannot overcome the default. Cavalieri does not argue that counsel should have pursued a different strategy; rather, he faults counsel's execution of that strategy. The trial record does not support Cavaliere's claim. During his closing argument counsel principally argued, as Cavalieri wanted, that the state failed to prove that Cavalieri had acted with premeditation, and urged that the evidence demonstrated, instead, that Cavalieri had acted in a heat of passion and was later so remorseful that he attempted to commit suicide. [2/4/10 Trial Tr., at 257–76]. Counsel further argued, consistent with the jury instructions, that the jury should acquit Cavalieri of first-degree murder if they found that he was too intoxicated to develop premeditation, at times framing the argument as Cavalieri just "snap[ping]." [<u>Id.</u> at 268–70]. Because an attorney is not ineffective when a chosen trial strategy is unsuccessful, Cavalieri has not presented a substantial claim of ineffective assistance to show cause for the procedural default in ground 3(A). <u>See</u> <u>Bell v. Evatt</u>, 72 F.3d 421, 429 (4th Cir. 1995) (concluding that petitioner could not demonstrate ineffective assistance by pointing to a "reasonable, but ultimately unsuccessful strategy"). For these reasons, the claims raised in Grounds 1, 3(A), and 5 will be dismissed for procedural default.

**B. Ground 2: Ineffective Assistance of Appellate Counsel**

Cavalieri argues that his appellate lawyer was constitutionally ineffective by declining to pursue Cavalieri's suggested claims on direct appeal and because her court submissions contained factual errors. [Dkt. No. 1, § 2254 Pet'n at 22]. The Commonwealth contends that this claim is exhausted but nonmeritorious. [Dkt. No. 30, Resp't Br. at 17, 22–23].

As explained in its opinion, quoted below, the state habeas court properly concluded that Cavalieri's claim regarding appellate counsel did not satisfy the <u>Strickland</u> criteria.

> The court finds petitioner has failed to show deficient performance under <u>Strickland</u>. Counsel's choice of which issues to raise on appeal is virtually unassailable. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745 (1983) (counsel cannot be found ineffective for failing to raise every non-frivolous issue identified by a defendant); <u>Townes v. Commonwealth</u>, 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987) (appellate counsel decides what questions should be raised on appeal).
>
> This is true because "appellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." <u>Burket v. Angelone</u>, 208 F.3d 172, 189 (4th Cir. 2000). "The attorney need not advance every argument, ***regardless of merit***, urged by the appellant and must play the role of an active advocate." <u>Fitzgerald</u>, 6 Va. App. at 56, 366 S.E.2d at 625 (quoting <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985)) (emphasis added). Counsel is not constitutionally obligated to raise every possible claim on appeal and a failure to do so does not render counsel's performance deficient.
>
> The court also finds petitioner has failed to prove prejudice, which in the context of an appeal, requires the petitioner to demonstrate a reasonable probability that the claims he asserts would have been successful on appeal. <u>See</u> <u>Williams v. Warden of Sussex I State Prison</u>, 278 Va. 641, 648, 685 S.E.2d 674, 678 (2009) (where counsel failed to preserve issue for appeal he was not ineffective where no reasonable probability of a different outcome had he done so).
>
> Finally, the court rejects as baseless petitioner's claim that appellate counsel's statement of facts contained errors [because this claim] is not supported by the record. Petitioner does not point to actual errors, but instead disputes the factual findings made at the suppression hearing and at trial with his own version of events.

[Resp't Ex. 5, at 13–14].

In evaluating this claim, "the question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard," and here, there is a reasonable argument. See Harrington v. Richter, 562 U.S. 86, 105 (2011); see also Jones v. Barnes, 463 U.S. 745, 751 (1983) (opining that defendants have no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"); United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) ("Attorneys can be selective and strategic without risking an ineffective assistance of counsel claim."). For these reasons, the claim in Ground 2 will be dismissed.

## C. Ground 3: Ineffective Assistance of Trial Counsel

The Commonwealth argues that Cavalieri's claims of ineffective assistance of trial counsel are exhausted but nonmeritorious. [Dkt. No. 30, Resp't Br. at 17, 22–23].

### i. Ground 3(B): Jury Instructions

In ground 3(B), Cavalieri contends that trial counsel provided constitutionally ineffective assistance by not objecting to two jury instructions and by not moving to vacate the verdict on the ground that the instructions contained presumptions that shifted the burden of proof away from the Commonwealth. [Dkt. No. 1-4, Pet'r Ex. G, at G-1–G-2]. The state habeas court denied this claim, explaining that:

> Petitioner does not specifically allege which of the jury instructions contained impermissible, burden-shifting presumptions. Habeas petitioners are required to allege sufficient, specific facts in support of their claim for relief; instead Petitioner has presented only a legal conclusion. See Penn v. Smyth, 188 Va. 367, 370-71, 49 S.E.2d 600, 601 (1948) (holding "mere conclusions or opinions of the pleader will not suffice to make out a case" for habeas relief). In any event, a review of the jury instructions reveals no impermissible, mandatory presumption language. (2/4/2010 Tr. at 199-207). Thus, the record belies petitioner's claim.
> Furthermore, petitioner has failed to explain how trial counsel's objection to a jury instruction that contained a "burden-shifting presumption" would have

affected the outcome of his trial, given his confession, the overwhelming collaborating evidence of his guilt — including Harper's decomposing body concealed under a bed in his home — and the totality of the jury instructions, which told the jury Petitioner was presumed innocent and that the Commonwealth bore the burden to prove every element of the offense beyond a reasonable doubt. (2/4/2010 Tr. at 199-207). See, e.g., Tweety v. Mitchell, 682 F.2d 461, 465 (4th Cir. 1982) (applying harmless error analysis to habeas claim that intent instruction contained an impermissible mandatory presumption). In these circumstances, the court finds petitioner has not borne his burden under either Strickland prong.

[Resp't Ex. 5, at 14–15]. In attachments to his federal habeas petition, Cavalieri quotes portions of two jury instructions that apparently included the statement "[y]ou may infer malice from the deliberate use of a deadly weapon, unless, from all the evidence, you have a reasonable doubt as to whether malice existed," which Cavalieri claims shifted the prosecution's burden in violation of Sandstrom v. Montana, 442 U.S. 510 (1979). Cavalieri further argues that such instructions were impermissible because it was "not in evidence that a weapon caused any injury." [Dkt. No. 1-3] at 33-35. The Fourth Circuit has reviewed a jury instruction containing this precise language, and concluded that it was constitutional and did not impermissibly shift the burden of persuasion from the prosecution to the defense, because it "merely instructed the jury as to what a reasonable inference would be. The individual jurors were not required to draw any inference." See Peterson v. Murray, 904 F.2d 882, 888 (4th Cir. 1990) (internal quotation marks and citation omitted). Moreover, because there are reasonable arguments to be made that counsel satisfied Strickland's deferential standards, this asserted ground of ineffective assistance cannot provide habeas relief. See Harrington, 562 U.S. at 105.

**ii. Ground 3(C): Motion to Suppress**

Cavalieri argues that trial counsel ineffectively argued a motion to suppress the evidence obtained during the search of his home. [Dkt. No. 1-4, Pet'r Ex. G, at G-2]. The state habeas court addressed this claim as follows.

Petitioner maintains trial counsel should have taken the following specific actions:

• obtained the recording of the 9-1-1 call he placed to Fire Rescue/Emergency Services;

• presented Mr. Brooks' statement "to a Sheriff's Deputy, corroborating Petitioner's statement he only summoned an ambulance;"

• argued to the court the significance that the CAD notes all say "patient;"

• emphasized "that Deputy Hill left Cavlieri's [sic] condominium for a period of time before being stationed as a 'guard'" in order to argue that Deputy Hill's "intrusion into bedroom #2 [was] a third 'protective sweep'" and the "epitome of illegal search and seizure;"

• "effectively cross-exam[ined] Sgt. Cerniglia to the point she stated, on the record, that in fact she did tell the defendant a CSI was coming to photograph the master bedroom and bath;"

• "identif[ied] that police had created, of their own accord, exigent circumstances to enter Petitioner's condo";

• "identif[ied] a 'no knock' entry was performed;"

• "identif[ied] for the court some of Petitioner's behavior was based on his extreme pain, hallucinations, and long-standing depression."

The court finds petitioner has not established deficient performance. Each of Petitioner's allegations . . . go toward trial counsel's tactical decisions in arguing the motion to suppress. It is well-established that once petitioner determined to be represented by counsel, counsel took control over the presentation of the case, and it was for counsel to decide the best strategy at the suppression motion. See Townes, 234 Va. at 320, 362 S.E.2d at 657; Spencer v. Commonwealth, 238 Va. 295, 303, 384 S.E.2d 785 (1989). "Counsel is not ineffective merely because [s]he overlooks one [trial] strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987). Tactical decisions, such as what issues to raise, lie solely within the province of counsel. Jones, 463 U.S. at 751-752 (the "process of winnowing out weaker claims . . . is the hallmark of effective" advocacy).

Here, the record establishes that not only did trial counsel vigorously advocate the issue of whether petitioner consented to the search of his condominium, trial counsel maintained law enforcement had no authority under any theory to conduct a search of petitioner's condominium. Trial counsel further emphasized during the evidentiary hearing on the motion to suppress that Petitioner's 9-1-1 call was recorded by dispatch as a self-inflicted shooting or stabbing and a suicide attempt, and argued that police did not therefore have probable cause to enter the condominium.

However, after hearing the testimony of the responding officers and petitioner, the Court found as a fact that petitioner expressly consented to the search of his condominium. The search was justified under the Fourth Amendment, and the motion to suppress was denied. Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful. See James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996).

The court further concludes petitioner has not established Strickland prejudice. Petitioner has not shown that, had trial counsel taken the actions he lists in his petition, the outcome of the suppression hearing would have been different. Nothing petitioner has argued on habeas changes the central fact found by the Court: that he consented to the search of his condominium.

[Resp't Ex. 5 at 16–18].

The state habeas court's explanation demonstrates that there are reasonable arguments supporting the conclusion that Cavalieri's trial counsel did not provide deficient performance that prejudiced the outcome of his trial. See Harrington, 562 U.S. at 105; see also Yarbrough v. Johnson, 520 F.3d 329, 336–37 (4th Cir. 2008) (observing that petitioner must overcome the presumption that counsel's decision to focus on advancing arguments counsel deemed more persuasive might be sound trial strategy). For these reasons, the claim in Ground 3(C) will be dismissed.

### iii. Ground 3(D): Expert Testimony

Cavalieri asserts that trial counsel provided ineffective assistance by failing to object to the testimony of a Commonwealth expert witness, who testified as an expert in the martial art of Judo. [Dkt. No. 1-4, Pet'r Ex. G, at G-11]. The state habeas court rejected that claim, explaining that:

Petitioner has not established deficient performance. Whether to object to inadmissible or objectionable material is a tactical decision left to counsel. Humphries v. Ozmint, 397 F.3d 206, 234 (4th Cir. 2005) (collecting cases). Fernando Yamasaki, who testified as an expert in the martial art of Judo, was a life-long Judo practitioner who had achieved a high level of expertise, owned his own dojo, and taught Judo at Georgetown University. A reasonably competent defense attorney could conclude that objecting to Yamasaki's qualification as an expert would be futile.

The petitioner's remaining allegations of deficient performance are without merit. The record establishes trial counsel not only thoroughly cross-examined Yamasaki, she also objected to the choke-hold demonstration. (2/4/10 Tr. at 116-19, 133-39). Petitioner's claim that "counsel admitted she was ill-prepared for the witness, and did not know what to ask him," is unsupported by any evidence beyond petitioner's self-serving claims, and trial counsel did not have any duty to ask the witness questions posed by petitioner. See Ozmint, 397 F.3d at 234.

The court also finds that petitioner's reliance on civil cases requiring a medical doctor to testify to the causation of human injury is misplaced. See, e.g., John v. Im, 263 Va. 315, 321, 559 S.E.2d 694, 697 (2002) (holding "[a]n opinion concerning the causation of a particular physical human injury is a component of a diagnosis, which is part of the practice of medicine"). It is plain from the record that Yamasaki's testimony was not offered for a medical opinion as to Harper's cause of death, but to show that petitioner, who described himself as a Judo black-belt, would be familiar with various choking techniques and their effect.

Finally, petitioner did not articulate how the outcome of his trial would be different had counsel taken the steps he outlined in his petition. Accordingly, petitioner did not prove Strickland prejudice. See Sigmon v. Dir. of the Dep't of Corr., 285 Va. 526, 535-36, 739 S.E.2d 905, 909-10 (2013) (dismissing habeas petition when petitioner "fail[ed] even to assert, much less demonstrate, that but for counsel's alleged errors, the result of his trial would have been different.").

[Resp't Ex. 5 at 21–22].

Because the state habeas court's decision presents a reasonable argument that trial counsel satisfied Strickland's deferential standard, see Harrington, 562 U.S. at 105, Cavalieri cannot prevail on this claim, and Ground 3(D) will be dismissed.

### iv. Ground 3(E): Medical Examiner Testimony

Cavalieri faults trial counsel's cross-examination of the medical examiner. [Dkt. No. 1-4, Pet'r Ex. G, at G-17–G-18]. The state habeas court stated the following in rejecting this claim.

The court finds petitioner has not shown deficient performance for two reasons. First, the scope of cross-examination is a matter of trial tactics. See Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978); Johnson v. Riddle, 222 Va. 428, 433, 281 S.E.2d 843, 846 (1981). Second, this claim is belied by the record.

On cross-examination, trial counsel specifically asked the medical examiner to clarify his earlier testimony that Harper's hyoid bone was broken in two places, which was more common in manual strangulation than in ligature strangulation. And, trial counsel confirmed with the medical examiner that he could not tell whether the marks on the right side of Harper's neck were from ligature marks or decomposition. And finally, trial counsel asked the medical examiner whether he found evidence of two separate strangulations, or evidence that Harper had been strangled manually, and then strangled with a ligature. The medical examiner answered that while there was no doubt Harper was strangled, he did not "find specific evidence . . . that pointed to one particular modality."

Under these circumstances, petitioner has not established either prong of the Strickland test.

[Resp't Ex. 5, at 23–24].

Cavalieri is not entitled to habeas relief on this ground. "The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. And the state habeas court's analysis demonstrates that there is a reasonable argument that trial counsel had met that standard, therefore, Ground 3(E) will be dismissed.

### v. Ground 3(F): Evidence Related to Cavalieri's and Harper's Relationship

Cavalieri contends that counsel provided ineffective assistance by failing to introduce evidence (principally, email communications) to counter the Commonwealth's evidence of a longstanding bad relationship between him and Harper. (Dkt. No. 1-4, Pet'r Ex. G, at G-18–G-19). The state habeas court concluded that this claim failed under Strickland.

[P]etitioner argues counsel failed to introduce material evidence in the form of "'loving' and cheerful emails" between petitioner and Harper, that, given the opportunity, petitioner could have pointed out these emails to defense counsel. Petitioner has failed to proffer these emails, and this failure to proffer is fatal to his claim. See Muhammad, 274 Va. at 18, 646 S.E.2d at 195. See also Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (internal quotation marks and citation omitted) (holding "habeas court cannot even begin to apply Strickland's standards" absent a "specific affirmative showing of what the missing

evidence . . . is"). Under these circumstances, petitioner has met neither prong of the Strickland test.

[Resp't Ex. 5, at 24].

Cavalieri has not persuaded the Court that no "reasonable argument that counsel satisfied Strickland's deferential standard" exists, and thus he cannot obtain habeas relief based on this asserted ground. See Harrington, 562 U.S. at 105; see also Tharpe v. Sellers, 138 S. Ct. 545, 552 (2018) (per curiam) (concluding that no reasonable jurist could debate the state court's rejection of petitioner's claim that was supported by only a conclusory allegation). Therefore, Ground 3(F) will be dismissed.

### vi. Ground 3(G): Motion to Strike/Motion to Set Aside the Verdict

Cavalieri claims that trial counsel was ineffective for failing to preserve a motion to strike and submitting a poorly drafted motion to set aside the verdict based on insufficiency of the evidence to support a conviction for first-degree murder. [Dkt. No. 1-4, Pet'r Ex. G, at G-20–G-21]. The state habeas court again concluded that this claim failed to meet either factor under Strickland, explaining that:

> [P]etitioner claims trial counsel was ineffective for failing to properly preserve the motion to strike on the sufficiency of the evidence and claims the motion to set aside the verdict was "poorly constructed" and "ineffective." This bald, conclusory claim does not merit habeas relief. See Hedrick, 264 Va. at 521, 570 S.E.2d at 862 (finding habeas petitioner had not established deficient performance or prejudice because he failed to provide any evidence to support claim); see also Bass, 6 Va. App. at 44, 366 S.E.2d at [618] (the habeas petition must allege sufficient facts which would support the conclusion of law advanced and mere conclusions or opinions of the pleader will not suffice); Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) (bald, unsupported assertions do not state a claim for relief). Petitioner has not met either prong of the Strickland test.

[Resp't Ex. 5, at 25].

Again, because the record shows "there is [a] reasonable argument that counsel satisfied *Strickland's* deferential standard," Ground 3(G) in Cavalieri's petition is meritless and will be dismissed for that reason. See Harrington, 562 U.S. at 105; see also Tharpe, 138 S. Ct. at 552.

### vii. Ground 3(H): Constitutional Right to Testify

Cavalieri argues that trial counsel interfered with his constitutional right to testify on his own behalf and, thus, provided ineffective assistance. [Dkt. No. 1-4, Pet'r Ex. G, at G-22, G-24]. The state habeas court rejected this claim, finding that:

> First, petitioner has not proffered what his testimony would have been in the trial court. Petitioner's statements in relation to Harper's murder were already before the Court in the form of his statements to law enforcement, including his confession to murdering Harper. Petitioner has not proffered that his testimony would have differed from his confession. This failure is fatal to his Strickland claim. See Muhammad, 274 Va. at 18, 646 S.E.2d at 195.
> Second, petitioner has provided no evidence supporting his conclusory claim that counsel "refused" to allow him to testify against his wishes, beyond his own self-serving statements. See Hedrick, 264 Va. at 521, 570 S.E.2d at 862.
> Third, petitioner's claim that counsel "refused to let" him testify because she was unprepared to question him lacks legal merit. Competent defense counsel can reasonably determine that a witness, who is telling the truth, does not need preparation before taking the stand. See Clozza v. Murray, 913 F. 2d 1092, 1101 (4th Cir. 1990) (trial counsel who stated that "he does not normally prepare clients for cross-examination, believing with reason that a witness who is not lying will not be tripped up" was not ineffective when habeas petitioner told a different version of events on the witness stand than he had previously given counsel). Petitioner does not have the right to have counsel assist him in concocting a lie. See id.
> And fourth, while the right to testify at trial cannot be waived by defense counsel, "if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client *in the strongest possible terms not to testify*." United States v. Teague, 953 F. 2d 1525, 1533 (11th Cir. 1992) (emphasis added). Thus, "[a]bsent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute ineffective assistance of counsel." Carter v. Lee, 283 F. 3d 240, 249 (4th Cir. 2002); see also Jones v. Murray, 947 F. 2d 1106, 1116 n.6 (4th Cir. 1991) (reiterating principle that advice to testify is paradigmatic of strategic decision). Had petitioner testified at trial, he would have been subject to cross-examination. A competent defense attorney, faced with the evidence of petitioner's guilt, including his statements to law enforcement, could reasonably conclude that exposing petitioner to a long and

detailed cross-examination would be an imprudent defense strategy. In these circumstances, petitioner has met neither Strickland prong.

[Resp't Ex. 5, at 26–27].

Because a "reasonable argument that counsel satisfied Strickland's deferential standard" exists, Cavalieri is not entitled to a writ of habeas corpus on this ground. See Harrington, 562 U.S. at 105; see also Tharpe, 138 S. Ct. at 552, and this claim will be dismissed.

### Ground 4: Cumulative Effect and Aggregate Prejudice of Ineffective Assistance of Trial Counsel

Finally, Cavalieri argues that his Sixth and Fourteenth Amendment rights were violated by the cumulative effect of trial counsel's errors. [Dkt. No. 1, § 2254 Pet'n, at 32]. The state habeas court rejected this claim for the following reasons:.

> [Cavalieri's] claim consists of a laundry list of short conclusory claims regarding the trial counsel's alleged ineffectiveness, alleged bias by the trial court, and insufficiency of the evidence. As noted above, portions of this claim are barred by the rule in Slayton, 215 Va. at 29-20, 205 S.E. 2d at 682. The remainder of this claim fails facially due to its conclusory nature. See Sigmon v. Dir. of the Dep't of Corr., 285 Va. 526, 535-36, 739 S.E.2d 905, 909-10 (2013); Muhammad v. Warden, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007). A habeas petitioner is not entitled to relief simply because he is able to "nitpick gratuitously" the conduct of his trial counsel. See Smith v. Mitchell, 348 F.3d 177, 206 (6th Cir. 2003).
> Moreover, the petitioner has failed to show prejudice in that there was substantial evidence of his guilt. To the extent the petitioner presents this as a claim of "aggregate prejudice," the claim fails because such claims are not cognizable in Virginia. See Lenz v. Warden, 267 Va. 318, 339, 593 S.E.2d 292, 305 (2004).

[Resp't Ex. 5, at 9–10].

Because in Virginia, claims of ineffective assistance of counsel "must be reviewed individually, rather than collectively" in § 2254 proceedings. Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998), Cavalieri's claim that his trial was infected by cumulative errors is not cognizable and must be dismissed.

### V. Conclusion

For the reasons stated above, the Commonwealth's motion to dismiss [Dkt. No. 28] will be granted, and a certificate of appealability will be denied. This petition will be dismissed with prejudice through an Order that will issue alongside this Memorandum Opinion.

Entered this 27th day of January 2020.

Alexandria, Virginia

_____/s/_____

Leonie M. Brinkema
United States District Judge