IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| David Edward Cavalieri, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:18cv356 (LMB/JFA) |
| | ) | |
| Harold W. Clarke,[1] | ) | |
| Respondent. | ) | |

<u>MEMORANDUM OPINION</u>

Proceeding <u>pro se</u>, Virginia state prisoner David Cavalieri ("petitioner" or "Cavalieri")

has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, seeking to have his

conviction for first degree murder and sentence of life imprisonment vacated.  Petitioner

originally filed his petition on March 29, 2018; however, the document was clearly missing

many pages and exhibits.  [Dkt. No. 1].  On April 17, 2019, the Attorney General of Virginia

filed a Motion to Dismiss the petition, addressing the claims that were included on the pages that

were actually filed.  [Dkt. Nos. 29-30].  Observing that it "[could not] evaluate arguments that

[were] not before it," (<u>i.e.</u>, claims contained in the missing pages), the Court granted the Motion

to Dismiss on January 27, 2020.  [Dkt No. 40] at 10.  Petitioner appealed, and the Fourth Circuit

remanded this action "with instructions to … permit Cavalieri to refile his § 2254 petition with

the missing pages."  [Dkt. No. 56] at 9.

---

[1] A prisoner's custodian is the proper respondent in a habeas corpus action.  <u>See</u> <u>Rumsfeld v.
Padilla</u>, 542 U.S. 426, 434-35 (2004).  Consequently, as the Attorney General of Virginia
observes, [Dkt. No. 71] at 1, Harold W. Clarke, the Director of the Virginia Department of
Corrections, is the appropriate respondent in this action.

Now before the Court is Cavalieri's complete petition [Dkt. No. 67] and the respondent's renewed Motion to Dismiss ("Motion"), which addresses all of petitioner's claims and includes a Roseboro notice.[2]  [Dkt. Nos. 70-72].  Petitioner has filed an opposition to the Motion to Dismiss, which he supplemented with a Statement of Facts and exhibits.  [Dkt. Nos. 75, 76, 77].  For the reasons explained below, the respondent's Motion to Dismiss will be granted, and this action will be dismissed.

### I. Factual Background

The factual background of petitioner's criminal conviction was summarized by the Virginia Court of Appeals when it reviewed the trial court's denial of Cavalieri's motion to suppress evidence as follows:

> On the morning of April 15, 2009, [Cavalieri] called the police from his residence.  The call was initially dispatched as a stabbing or a shooting.  Deputy James Gutshall was the first to arrive at [Cavalieri's] apartment. The door was partially open, and the officer heard someone talking inside.  Gutshall pushed open the door and saw [Cavalieri] pacing while talking on a telephone. Concerned that someone was injured based upon the information he had received, Gutshall asked [Cavalieri] to display his hands and put down the phone.  When Gutshall asked [Cavalieri] if anyone else was in the residence [he] stated someone else lived there but was not at home.
>
> Sergeant Linda Cerniglia also arrived at [Cavalieri's] apartment. [Cavalieri] displayed his injuries and stated he had been cut or stabbed. [He] had cuts on his neck and abdomen.  He stated he had inflicted the neck wounds and then when pointing to his abdominal wounds, he initially stated he had not inflicted those. [He] then remarked that he did not want "anyone to get in trouble" and claimed he had done "th[o]se too."
>
> At the suppression motion hearing, Gutshall testified he asked [Cavalieri]: "Well, do you mind if we look around then?" [Cavalieri] responded, "no, go ahead." Although these remarks were not in the initial police report, the trial court specifically found the officer's testimony credible and rejected [Cavalieri's] denial that the officer had asked for consent to search.

---

[2] See Roseboro v. Garrison, 528 F.2d 308 (4th Cir. 1975).

> The officers conducted an initial sweep of the apartment looking for other people
> – either suspects or victims. At first, the officers found no one. [Cavalieri] was
> transported to the hospital, and Deputy David Hill remained behind to secure the
> scene. Hill was aware that officers had not looked under the bed in one of the
> bedrooms during the initial search. Approximately two hours after the original
> search, Hill looked under the bed and discovered a body wrapped in black plastic.

Respondent's Exhibit ("Resp't Ex") 4 [Dkt. No. 30-4] at 2.[3]

The record also shows that Investigator Mark McCaffrey interviewed Cavalieri at the

hospital, beginning at 1:50 in the afternoon, and their exchange—including Cavalieri's

confession that the body belonged to Stacie Harper ("Harper" or "the victim"), whom he had

killed two weeks earlier—was played for the jury at trial. [2/1/10 Trial Tr.] at 70, 73. During

that interview, McCaffrey asked Cavalieri, "How did it get to what it led up to?" [Resp't Ex. 7]

at 32. Cavalieri replied, "What are you talking about … have you, you found her I take it?" Id.

at 33. Cavalieri then stated that he was in a "drunken stooper [sic]," that he and Harper argued,

and "honest to god I remember grabbing her by the hair out of the back of the chair . . . I

remember choking her." Id. McCaffrey followed up, "is that how she died?" Id. Cavalieri

responded, "Yeah I choked her." Id. Cavalieri further recounted that "[w]e were both drinking,

got into an argument, back and forth … and then the moment I just snapped, and that was that."

Id. at 36-37. Cavalieri added that, after smoking a cigarette, he washed Harper's body and then

wrapped her in a shower curtain and black plastic bags. Id. at 37, 39-40, 45. After about a week,

he put the body underneath the bed because, he said, "if somebody comes over this isn't gonna

be good," and, a week after that, he decided to "just turn this whole thing over to God" by

---

[3] The numbered Respondent's Exhibits referred to in this opinion were appended to respondent's
April 17, 2019 brief in support of its original Motion to Dismiss, which is located at Docket
Entry 30.

"go[ing] to the hospital, and see[ing] what happens," instead of killing himself, which had been his initial plan. Id. at 47.

At 3:38 on the afternoon of April 15, 2009, Investigator Shannon Coderre applied for a search warrant, and a warrant was issued for the search of petitioner's home. [Rec. No. 20989, Search Warrant] at 519-523. The officers who executed the warrant removed Harper's body and collected other evidence from the apartment. Id. at 524-526.

Petitioner was charged with first degree murder. Before the jury trial began, petitioner's attorneys, Lorie O'Donnell and Sarah Bruns ("trial counsel" or "O'Donnell" and/or "Bruns") filed a motion to suppress the evidence seized from Cavalieri's home. The trial court held a hearing at which law enforcement officials and Cavalieri testified. [12/11/09 Tr.]. Petitioner and the law enforcement officials offered very different accounts of the events—most notably with respect to whether petitioner consented to requests to "look around" his apartment. Id. On December 11, 2009, the trial court denied the motion, finding that petitioner had consented to the search of his home. [12/11/09 Tr.]. In so doing, the trial court expressly stated that it "[found] Deputy Gutshall and Sergeant Cerniglia"—two of the officials who entered petitioner's home and testified at the hearing—"[were] more credible on this issue of consent than [was] Mr. Cavalieri." Id. at 17.

On December 18, 2009, trial counsel filed a Franks[4] motion, arguing that the affidavit supporting the warrant to search plaintiff's home contained inaccuracies and that, without the inaccurate information, the affidavit did not provide probable cause. [1/20/10 Tr.]. Specifically, trial counsel explained that Investigator Shannon Coderre ("Coderre") attested in her search

---

[4] Franks v. Delaware, 438 U.S. 154 (1978) holds that where a defendant makes a showing that a false statement was included in an affidavit supporting a search warrant and that the statement was necessary to the finding of probable cause, the search warrant lacks validity.

warrant affidavit that a deputy discovered Harper's body during "cursory processing" but, in contrast, testified at the motion to suppress hearing that Harper's body was not found until several hours after law enforcement first arrived at the scene. [Rec. No. 20989, 12/18/09 Mtn.]. The trial court reiterated its finding that petitioner had consented to the search of his home, which "rendered any other issue with respect [to the search] moot," [1/20/10 Tr.] at 29, and held that, even ignoring the portions of the affidavit that the defense contended were false, the affidavit still established probable cause to justify issuance of the warrant, id. The charges against plaintiff then proceeded to trial by jury.

Dr. Shane Chittenden, the medical examiner who performed Harper's autopsy, testified at trial about the cause of death. [2/4/10 Trial Tr.] at 140, 143. First, he explained that Harper had numerous contusions resulting from blunt-force trauma at or near the time of death (including bruises on her arms, lips, eyes, and the underside of her scalp) but ultimately died by strangulation. Id. at 154–60, 166–69, 177. He also testified that Harper's hyoid bone was broken in two places—which supported his conclusion that Harper was strangled—and that "a significant amount of force is required to break that bone." Id. at 163–64. When asked about marks on her neck, Chittenden stated that they could have been caused by a ligature or by decomposition. Id. at 178–79. The doctor could not determine whether the cause of death was by manual or ligature strangulation: "There is no question that she was strangled and that is the cause of her death, but I didn't find specific evidence that pointed to one particular modality." Id. at 180–81. He further opined that if, hypothetically, Harper had been strangled with twine being placed around her neck, "death would occur in a matter of minutes." Id. at 170–71.

The Commonwealth also presented Fernando Yamasaki as an expert witness in the martial art of judo, in which petitioner was a black belt. Yamasaki testified that a person who had

5

achieved a black belt in judo would be very experienced at using chokeholds on other people. He described the type of chokehold that petitioner told investigators he had used on Harper,[5] and explained that this type of chokehold is very commonly used in the sport of judo to choke opponents into submission.  Yamasaki demonstrated the chokehold in the courtroom.  [2/4/10 Trial Tr.] at 107-139.

During closing arguments, trial counsel urged the jury to find that the evidence did not support a conviction for first-degree murder, which in Virginia requires premeditation and malice.  Id. at 251-77.  Counsel argued that Cavalieri had strangled Harper manually, in the "heat of passion" while he was intoxicated.  Id. at 257–62, 268–70, 274.  After a three-day trial and two days of deliberations, the jury rejected Cavalieri's defense and found him guilty of first-degree murder.  [2/17/10 Trial Tr.] at 11.  Consistent with the recommendation of the jury, Cavalieri was sentenced on May 18, 2010 to life imprisonment.  [5/18/10 Sentencing Tr.] at 70.

Cavalieri was appointed new legal counsel, attorney Corinne Magee ("first appellate attorney" or "Magee"), for his direct appeal.  See [Rec No. 20989, Sentencing Order] at 741. The only issue Magee raised on Cavalieri's behalf was the trial court's denial of his motion to suppress.  Because Magree did not file the transcripts necessary for the appellate court to evaluate the trial court's ruling, the appeal was denied.  [Rec. No. 1160-10-4, 12/29/10 Order]. The Supreme Court of Virginia refused Cavalieri's petition for appeal on August 25, 2011.  [Rec. No. 110559, 8/25/11 Order].

Acting pro se, Cavalieri then sought habeas relief in the state trial court, raising the following claims, which are listed below using petitioner's own words:[6]

_____

[5] During his interview with investigators, Cavalieri described his judo knowledge and demonstrated the chokehold he used on Harper.  [2/4/10 Trial Tr.] at 118.
[6] Petitioner's misspellings, inconsistent use of capitalization, typographical and grammatical

6

(A) Denial of my right of Appeal.  My direct appeal, challenging the trial judge's decision in my motion to suppress due to illegal search and seizure, was never decided on the merits.  A reversal would require the dismissal of my charges;[7]

(B) Conviction obtained by use of evidence gained pursuant to unconstitutional search and seizure;

(C) Conviction obtained by unconstitutional failure of the prosecution to disclose evidence favorable to the Defendant in their possession;

(D) Verdict is contrary to the law and the evidence.  The record contains manifestly insufficient evidence to support the necessary conclusion for Murder 1;

(E)(I) Counsel failed to properly and competently litigate Defendant's 4th Amendment Illegal search and seizure claim.  The verdict would have been different absent excludable evidence.  Counsel failed to present Supreme Court precedence for the trial courts review.  Counsel failed to properly investigate the circumstances surrounding the Defendant's claim by never interviewing or debriefing Defendant as to what factually took place.  Counsel failed to competently cross examine the Commonwealth's witnesses as to the events of the day in question.  The trial record is rife with testimonial inconsistencies;

(E)(II) Counsel failed to properly prepare and investigate Defendant's case.  At no time did counsel ever sit with Defendant and ask "exactly what happened, what was said by police", prior to Defendant's hearing on his motion to suppress.  Expressly, counsel was ill-prepared to question defendant.  At not time prior to trial did counsel go over Defendant's confession with him and investigate of ask questions.  At no time during the trial did counsel attempt to clarify any facts.  Twice during the year long case proceeding, defendant asked for copies of the transcripts and briefs. Counsel's reply was, "I don't have time to make you copies!  I can either prepare your case or make you copies.  I can't do both!"  Defendant was never given an opportunity to see or question any of the Commonwealth's evidence prior to trial; counsel never presents their witness list.  Counsel interviewed 4 defense witnesses two weeks before trial in clear disregard of the urgency of the case;

(E)(III) Counsel failed to present in its defense a video counsel had taken of Defendant's condo some 48 hours after Defendant's arrest.  The video would have presented visual evidence of the 4 cases of beer bottles (20 pack cases), multiple sake bottles and empty wine in the Defendant's kitchen.  The video

_____

errors are reproduced in this opinion without correction or additional indication that the errors appear in the original source.

[7] Petitioner includes a list of "facts" after this claim that shows he was complaining about his appellate counsel's failure to file transcripts on appeal.  As a result, it is clear that this claim asserts ineffective assistance of appellate counsel.

7

would have shown blood in the master bedroom, and master bathroom, and the absence of blood anywhere else in the condo. The absence of blood in the kitchen, on the wall, would have gone to impeach police testimony.

The video would have shown the layout and flow of the condo. It could have been used to impeach Deputy Hill's testimony that he had to walk back and forth in the condo to be able to see both entrances. Of paramount importance is the fact that several officers testified that there was a sliding glass door in the Defendant's condo. Deputy Hill stated the sliding glass door was one of the reasons he had to go search bedroom 2 again. Another officer states the sliding glass door was off the living room. The video would have impeached all of their testimony as it would have shown there was no sliding glass door in the Defendant's condo.

This video would have completely changed the outcome of the trial by offering proof positive that there was no reason for Deputy Hill to be in bedroom 2. It would have provided proof of the inconsistencies in the police testimony. Testimony the judge used to find the police testimony more credible than the Defendant's;

(E)(IV) Counsel failed to call expert witnesses for the defense. A state ordered mental evaluation was given. Testimony from the psychiatrist would have been that what transpired was a "normal domestic homicide" and that the obvious depression and drinking altered the defendant's state of mind to the point where the crime could only be manslaughter. The psychiatrist also would have offered expert testimony that Defendant has a likely sexual addition- as deduced from history- and that emails to women after the victims death were the Defendant's emotional defense mechanism and his way of dealing with stress. The emails were not indicative of malice behavior, but of morose behavior;

(E)(V) Ineffective and incompetent cross examination of the Medical Examiner. The medical evidence, and indeed the autopsy, reports proof that manual strangulation was the cause of death. Counsel somehow did not make that evidence clear enough to stand out for the jury. A copy of the cause of death should have been submitted into evidence as an exhibit. The Commonwealth brought about a hypothetical that the string used by Defendant was what caused death. The Commonwealth's chief theory is that the string caused the death, which was clearly murder. Obvious prejudice by incompetent cross.

However, had the defense counsel competently crossed the Medical Examiner, it would have learned, and the Medical Examiner would have testified, that ALL bodies go through 'aspiration' shortly – 5 to 10 minutes- after death. Shortly after death occurs, a body rids itself of oxygen and gases in the lungs, and excretes bowel and bladder contents. It is aspiration that the Defendant explains in his confession and makes reference to the gurgling sounds, and air coming from the victim's chest.

8

The prejudice here is very clear.  The entire theory of the prosecution disappears with the expert testimony, and the jury would surely be impacted and probably arrive at a different verdict.  Certainly no that of Murder 1;

(E)(VI) Counsels' failure to introduce material evidence in the form of the victim as it related to her relationship with the Defendant.  The Commonwealth used emails between Defendant and the victim to build a circumstantial case.  The Commonwealth admitted dozens of emails into evidence in support of its claims.  Defense counsel did not give Defendant an opportunity to peruse through the thousands of emails available to mitigate the Commonwealth's claim of supplying "loving" and cheerful emails.  Counsel offered zero due to negligence of duty.

The court testimony, from January 2009 in the Juvenile Court, presided over by Judge Chamblin, has the victim on record describing a loving household with the Defendant, a loving, strong and happy relationship, and per testimony, how the Defendant and victim were getting married in June.  This testimony would have obviously been a great strategy for disproving the Commonwealth's theory, or at the least, mitigating and lessening any impact from the emails supplied by the Commonwealth;

(E)(VII) Counsel did not properly preserve the motion to strike on the sufficiency of the evidence and thus rendered the claim waived and unavailable for appellate counsel.  Surely, counsel is aware of the Delaney case and therefore one must assume negligence on counsel's part for not preserving an overwhelmingly justifiable claim.  [See 14(d) herein]  The motion to set aside the Jury's verdict (Mat 5, 2010) is poorly construed, ineffective in it's argument, contains none of the actual inconsistencies, and doesn't showcase the actual lack of evidence.  This claim is ineffective trial counsel as well as ineffective counsel for not appealing the judge's erroneous decision;

(E)(VIII) Seven witnesses, not including the aforementioned psychiatrist, and the one material witness called on my behalf, were supposed to be subpoenaed to testify in my defense.  Defendant wanted them to testify and briefed defense counsel on the attributes of their testimony.  Defense counsel denied Defendant his right to present witness testimony to establish a defense.  Defendant was denied his 6th Amendment right to have compulsory process for obtaining witnesses in his favor.  Counsel has not right to override what the client considers to be in his best interest;

(E)(IX) Defendant was denied the right to testify on his own behalf.  Defendant told his attorneys, at least twice prior to the start of trial, that he wanted to testify on his own behalf.  During the trial and after the testimony of Investigator Coderre and Defendant's confession specifically, Defendant again emphatically stated he wanted and needed to testify on his own behalf two more times.  Defense counsel was unprepared for Defendant to take the stand, had prepared no line of questioning or strategy, and refused to let Defendant testify.

On the record, during the hearing of the suppression motion, it can be seen, however briefly, that Defendant attempts to get facts materially affecting his case clear and on the record. The commonwealth quickly abandoned their questioning realizing the facts would be of detriment to their theory.

The prejudice lies in the fact that the Defendant was denied his constitutional right to testify on his own behalf because his attorney was not prepared. Defendant's testimony would have shown that the Commonwealth solicited false evidence and testimony; materially false evidence and testimony that grossly affected the trial.

(F) Defendant's conviction was obtained through false evidence. Defendant's 5th Amendment Due Process rights were violated. A Napue violation occurred;[8]

(G) the search warrant was obtained without probable cause, thereby nullifying any evidence found. The search warrant is void;

(H) Evidence obtained in the violation of the 4th, 5th, or 6th Amendment may not be introduced at trial. When a court improperly admits evidence in violation of the Exclusionary Rule, reversal is required;

(I) The accumulation of errors, gross negligence by Defense counsel, and incredible testimony by material witnesses for the Commonwealth violates Defendant's 14th Amendment Due Process rights. An evidentiary hearing is necessary to obtain the pursuit of justice in this matter;

(J) Verdict obtained by use of faulty jury instruction. Proof Beyond a Reasonable Doubt was not properly and legally explained to the jurors, leaving the Defendant with the weight of proving innocence rather than the prosecution the burden of proving guilt (5). Also, the jury instruction for Manslaughter was improperly given and the judge refused to correct this error; and

(K) Conviction obtained by use of evidence gained pursuant to an unlawful arrest.

[Rec. No. 73225, 4/5/12 Habeas Pet'n].

---

[8] Petitioner's claim refers to <u>Napue v. People of the State of Ill.</u>, 360 U.S. 264 (1959) (acknowledging that "[t]he principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness").

On May 8, 2012, Cavalieri filed a "Petition in Support of Writ of Habeas Corpus," in

which, in addition to the claims raised in his original petition, he raised the following ineffective

assistance of counsel claims:

> Claim #3  Counsel failed to disclose the defense witness list until the day of trial,
> and then failed to call any of the witnesses save one. Counsel failed to interview
> several of the witnesses until two weeks before the trial and did not prepare any of
> the witnesses for testimony.
>
> Counsel failed to introduce three (3) witnesses who worked at the Giant identified
> by the defendant. These witnesses would have attested to the Defendant's likable
> demeanor and his daily 6 a.m. alcohol purchases. They would have testified their
> "joke" to the defendant, if he showed up after 7 a.m., that he was late. Their
> testimony would corroborate the Defendant's testimony of alcoholism for the six
> to eight months prior to the day of arrest. See: Raygoza v. Hulick, 474 F 3d 958,
> 865-66 (7th Cir. 2007)
>
> Counsel failed to introduce three (3) character witnesses that would have offered
> testimony to mitigate the negative influence of the prosecution's proffered emails.
> All three character witnesses lived in the same until of condos; all three would
> have testified that the Defendant and Victim were a normal, mostly happy couple.
> The upstairs neighbor atteste4d that although she heard the "Defendant and
> Victim" argue on two occasions, she never heard or saw anything violent.
> Counsel refused to have her testify.
>
> Lambright v. Schriro, 485 F. 3d 512, 525-30 (9th Cir.) (counsel's failure to
> investigate or pursue mitigating evidence was objectively unreasonable strategy
> because such evidence was readily available).
>
> Morales v. Mitchell, 507 F 3d 916, 936 (6th Cir. 2007) The Sixth Amendment
> guarantees the right to have compulsory process for obtaining witnesses in
> Defendant's favor. Counsel's failure is a per se Sixth Amendment violation.
>
> (5) Counsel failed to challenge the credibility and applicability of the
> Commonwealth's key witness, a 5th degree Jiu-Jitsu Sensei.[9] Counsel failed to
> adequately cross examine said witness.

---

[9] Cavalieri refers to the Commonwealth's expert witness, Fernando Yamasaki, as a "Jiu-Jitsu
Sensei." [Rec. No. 73225, May 2012 Suppl. Habeas Pet'n] at 21. Although Yamasaki testified
at trial that he teaches Brazilian jiu-jitsu in addition to judo, wrestling, and law enforcement self-
defense, the prosecution tendered him only as "an expert in the martial art of Judo." [2/4/10
Trial Tr.] at 107–08, 112.

Higgins v. Renico, 470 F 3d 624, 631-35 (6th Cir. 2006) Court first determined that Counsel's failure to challenge credibility of Prosecution's key witness was deficient, then held failure was prejudicial.

Matter- of- fact, Counsel was unreasonably deficient in her examination of the witness. To wit:[T. May 18, 2010; p 7 at 9] "With respect to Mr. Yamasaki's testimony, Judge, I would just state that, one, Ms. O'Donnell did not object to him testifying at all, didn't object to the scope of his testimony, the area of knowledge that he was able to provide to the court and to the jury, so he testified to all of that without objection from defense counsel."

At trial, during the Commonwealth's direct of Mr. Yamasaki, Defendant realized Counsel did not have knowledge or insight to properly cross-examine the witness. Counsel was completely unprepared. In an attempt to mitigate the testimony, Defendant wrote down several questions for Counsel to ask the witness on cross. Counsel's reply to the Defendant, in regard to the questions, was "I won't ask what I don't know the answer to." Defendant replied, "I know how he'll answer, ask the questions." Counsel refused. Not sound strategy considering Defendant is an expert in the field the witness was testifying about, and Counsel was not prepared in the least to create mitigating testimony.

Also, counsel should have made a motion for a Daubert hearing regarding Mr. Yamasaki and his potential testimony. If for no other reason, than at least counsel could have prepared a knowledgeable and efficient cross examination.

[Rec. No. 73225, 5/8/12 Suppl. Habeas Pet'n; Resp't Ex. 3].

In response to Cavalieri's petition to the state trial court, the Commonwealth conceded that his first appellate attorney had prevented him from exhausting his appellate remedies. [Resp't Ex. 3] at 5. For that reason, the state trial court directed the Commonwealth to petition the Court of Appeals of Virginia to provide Cavalieri permission to seek a delayed appeal. Id. The trial court dismissed the remainder of Cavalieri's claims without prejudice, cautioning that if petitioner sought habeas review again, he would be limited to those claims and any new ones that should arise connected to his renewed direct appeal. Id. at 6.

In Cavalieri's second direct appeal, newly appointed appellate attorney Renee Berard ("second appellate attorney" or "Berard"), like her predecessor, argued that the trial court erred by denying Cavalieri's motion to suppress. [Rec. No. 0751-13-4, Def.'s Pet'n for Appeal] at 1.

Specifically, Berard contested the trial court's finding that Cavalieri had consented to the search of his home. Id. at 16–22. Cavalieri submitted numerous pro se filings attempting to raise other alleged trial errors, which, he said, Berard refused to include in the appellate brief. [Rec. No. 0751-13-4, 8/8/13 Order]. The Court of Appeals of Virginia did not allow Cavalieri to amend his petition for appeal through his pro se filings, id., and ultimately concluded that the record supported the trial court's finding that Cavalieri had expressly consented to an unlimited search of his home, thus rendering the search lawful, [Rec. No. 0751-13-4, 11/6/13 Order]. Cavalieri, still represented by Berard, appealed to the Supreme Court of Virginia, asserting that the appellate court erred by upholding the trial court's ruling on the motion to suppress. [Rec. No. 140310, 2014 Pet'n for Appeal]. The Supreme Court of Virginia refused Cavalieri's petition for appeal on July 18, 2014. [Rec. No. 140310, 7/18/14 Order]. Cavalieri then filed a pro se petition for rehearing, [Rec. No. 140310, Pet'n for Rehr'g], which the Supreme Court of Virginia denied on September 18, 2014, see [Rec. No. 140310, 9/18/14 Order].

Cavalieri filed a second state habeas petition on July 16, 2015, contending that his trial and direct appeal suffered from numerous constitutional deficiencies, including 16 claims of ineffective assistance from trial counsel. His claims consisted of the following:

I. Petitioner's 5th Amendment and 14th Amendment rights under the U.S. Constitution were violated by the ineffective assistance of appellate counsel on Direct Appeal, a 6th Amendment violation;

II. Cavalieri's U.S. Constitution 14th Amendment rights of Due Process and Equal Protection were violated by the Court of Appeals when it denied the defendant his right to submit an amended Petition For Appeal pro se;

III(14(f)). Defendants conviction was obtained by the prosections knowing use of perjured testimony. Cavalieri's US Constitution 14th Amendment Due Process guarantee was violated;

IV. Petitioner's US Constitution 4th Amendment right against illegal search and seizure was violated. The conviction was obtained by use of evidence gained persuant to an unconstitutional search and seizure;

V(14(b)). Defendants US Constitution 14th Amendment rights of Due Process were violated by the Abuse of Discretion of the Trial Court by its denial of the Motion to Suppress;

VI. Defendants 5th Amendment right to present a complete defense and his 14th amendment right of Due Process were violated by the unconstitutional failure of the prosecution to disclose favorable and exculpatory evidence, to the Defendant, in their possession;

VII. Defendants 14th Amendment Due Process and Equal Protection Under the Law rights were violated whereby the Search Warrant was obtained without being the product of an independent source. No probable cause existed;

VIII. Defendants US Constitution 14th Amendment Due Process guarantee was violated by the use of erroneous, improper jury instructions;

IX. Defendants US Constitution Sixth Amendment Guarantee of the Effective Assistance of Counsel was violated by the deficient performance and resultant prejudice of trial counsel;

> (1) Counsel did not properly, fully, or effectively present an Affirmitive Defense to the trial court for its consideration by the jury;
>
> (2) Counsel neglected to object at trial, and to file to vacate the verdict, whereas several of the jury instructions contain impermissible burden-shifting presumptions that operated to relieve the Commonwealth of its burden of ultimate persuasion;
>
> (3) Counsel failed to fully and competently litigate the defendants US Const. 4th Amendment Illegal Search and Seizure claim to the trial court;
>
> (4) Counsel did not object to, and allowed the Commonwealth to infer the victim died as a result of strangulation with twine;
>
> (5) Counsel did not object to the Commonwealths proffer that the "defendant was pacing back and forth behind the couch";
>
> (6) Counsel had an objective duty to proffer evidence of defendants "far greater than a reasonable person" drinking habits;
>
> (7) Counsel failed, neglected, was beyond deficient in not preparing and investigating Defendants case;

14

(8)  Counsel failed to object to the Commonwealths Expert witness, a 5th degree Jiu-Jitsu Sensei;

(9)  Counsel neglected to comport with the Constitutional tenants of the 6th Amendment.  Namely, a defendant has a compulsory process right to call witnesses in his favor;

(10)  Counsel failed to have testify an expert witness who had favorable testimony for the defense;

(11)  Ineffective and incompetent cross examination of the Medical Examiner;

(12)  Counsels' failure to introduce material evidence in the form of the victim as it related to her relationship with the Defendant;

(13)  Counsel did not properly preserve the motion to strike on the sufficiency of the evidence and thus rendered the claim waived and unavailable for appellate counsel;

(14)  Seven witnesses, not including the aforementioned psychiatrist, and the one material witness called on my behalf, were supposed to be subpoenaed to testify in my defense;

(15)  Defendant was denied the right to testify on his own behalf;

(16)  Counsel denied Cavalieri his right to testify in his own defense. Counsels actions violated the Defendants U.S. Constitution 5th Amendment Due Process guarantee to testify in your own defense;

X.  Defendants Sixth Amendment and Fourteenth Amendment rights were violated by the cumulative effect of trial errors, false testimony, and the ineffective assistance of counsel; and

XI.  There was insufficient evidence as a matter-of-Law to sustain the verdict. Defendants US Constitution guarantee of Due Process of Law was violated.

[Rec. No. 95313, 2015 Habeas Pet'n; Resp't Ex. 5] at 2–5.  The state trial court reached the merits of only some of Cavalieri's habeas claims, all of which were based on ineffective assistance of counsel, and concluded that the remaining claims were procedurally barred or not cognizable on habeas review.  [Resp't Ex. 5].  As to the ineffective assistance claims that it

reviewed, the state trial court concluded that Cavalieri had not satisfied the requirements of

Strickland v. Washington, 466 U.S. 668 (1984). Id. at 12–27. The Supreme Court of Virginia

summarily refused Cavalieri's appeal on October 26, 2017 and denied his petition for rehearing

on February 1, 2018. [Rec. No. 160885, 10/26/17 Order, 2/1/18 Order].

Petitioner timely filed for relief under 28 U.S.C. § 2254, in a petition that raises the

following claims:

> I. Cavalieri's Fifth and Fourteenth US Constitution Amendment rights were violated by the Virginia Court of Appeals when it denied the Defendant his right to file a pro se Petition for Appeal.

> II. Petitioner's 5th, 6th, and 14th US Constitution Amendment rights were violated by the ineffective assistance of appellate counsel.

> III. Petitioner's Sixth US Constitution Amendment rights were violated by the ineffective assistance of trial counsel and the resultant prejudice thereof.

>> A. The Defendant was denied a full and fair litigation of his 4th amendment claim due to the errors of counsel and the prejudice thereof.

>> B. Trial counsel was ineffective and all but grossly incompetent during Cavalieri's trial. If not for her incompetent representation, there is a reasonable probability Petitioner would only have been convicted of Manslaughter – which is what he confessed to.

>>> 1. Counsel did not properly, fully, or effectively present an Affirmative Defense to the court for its consideration by the jury.

>>> 2. Counsel neglected to object at trial, and thereafter did not file for a writ of error or to vacate the verdict, whereas TWO (2) of the jury instructions contain impermissible burden-shifting presumptions that operated to relief the Commonwealth of its burden of ultimate persuasion.

>>> 3. Counsel failed to competently and fully litigate the defendant's 4th amendment Illegal Search and Seizure claim during the Motion to Suppress.

>>> 4. Counsel allowed the Commonwealth to infer the victim died as a result of strangulation by twine (use of a deadly weapon). She did not Motion to Strike or Object to Strike.

5. Counsel did NOT object to the prosecution's continuous false proffer that the "defendant was pacing back and forth behind the couch."

6. Counsel had an objective duty to proffer evidence of defendant's "far greater than a reasonable person" drinking habits.

7. Counsel failed to prepare, was negligent, was deficient in not properly preparing and investigating Defendant's case.

8. Counsel failed to object to and move to strike the entirety of Mr. Yamasaki's testimony as overly prejudicial, inflamatory, and non-probative.

9. Counsel neglected to comport with the Constitutional tenants of the sixth amendment; counsel denied Petitioner his compulsory process right to call witnesses in his favor.

10. Counsel was ineffective and incompetent on cross-examination of the Medical Examiner.

11. Counsel failed to introduce as evidence material facts and testimony disproving the Commonwealths presentation to the jury that there was a long standing bad relationship.

12. Trial Counsel was ineffective for failing to properly preserve the Motion to Strike on the Sufficiency of the evidence, and asserts the Motion to Set Aside The Verdict was poorly constructed and ineffective.

13. The Defendant was denied his 5th Amendment right to testify on his own behalf by counsels refusal to put him on the stand.

14. Counsel did not competently litigate defendants search warrant at the Franks Motion in violation of his Sixth and Fourteenth amendments.

IV(A).  Defendant was denied a full and fair litigation of his Fourth Amendment claim due to the errors and omissions of O'Donnell [trial counsel], and the resultant prejudice resulted in a trial.

IV(B).  Trial Counsel was constitutionally deficient and ineffective in her representation of Cavalieri at trial.  Petitioner Asserts that a Cumulative Review/Analysis of the errors and omissions as identified hereinbelow will provide proof the Defendants 6th Amendment was violated.

17

V.  Petitioners Fourteenth and Sixth Amendment rights were violated as
Defendants conviction was obtained by the Prosecutions Knowing use of false
statements and perjured testimony.

[Dkt. No. 67].

## II.  Exhaustion and Procedural Default

Before a state prisoner may file a federal petition for writ of habeas corpus, he must first

exhaust his claims in the state court system.  28 U.S.C. § 2254(b)(1)(A).  Indeed, a state prisoner

"must give the state courts one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel,

526 U.S. 838, 845 (1999).  In Virginia, to exhaust state remedies, "a petitioner must present the

same factual and legal claims raised in the [federal] petition to the Supreme Court of Virginia

either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a

circuit court's denial of a state habeas petition."  Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d

584, 587 (E.D. Va. 2006).

A successfully exhausted claim may nevertheless be unreviewable in federal court if a

state court denied that claim pursuant to an independent and adequate state law ground.  See

Harris v. Reed, 489 U.S. 255, 259 (1989).  And a federal habeas court may deem a claim that

was not presented to the highest state court to be both exhausted and barred from review "if it is

clear that the claim would be procedurally barred under state law if the petitioner [now]

attempted to present it to the state court."  Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

Federal habeas petitioners may overcome procedural bars and receive review of their claims

through a showing of cause and prejudice, see Gray v. Netherland, 518 U.S. 152, 162 (1996), or

actual innocence, see McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).  In the context of

ineffective assistance of counsel claims, a petitioner may avoid a finding that his claim is both

18

exhausted and procedurally defaulted pursuant to the holding of <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), in which the Supreme Court stated that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Martinez</u>, 566 U.S. at 17.  Under <u>Martinez</u>, to demonstrate that the underlying ineffective assistance claim is "substantial" and thereby demonstrate the "prejudice" necessary to overcome a default, the petitioner must show that the claim has "some merit." <u>Id.</u> at 14.

### III.  Merits Standard of Review

Once it is determined that a petitioner has satisfied the exhaustion requirement and has not defaulted a particular claim, a district court will consider the merits of that claim.  To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a habeas petition only when the state court's decision on the merits of a claim presented in the petition was (1) contrary to, or involved an unreasonable application of, clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2).  The question, then, "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

## IV. Analysis

**A.    Claim I – Due Process**

In Claim I, petitioner argues that the Court of Appeals of Virginia violated his due process rights when it denied him the opportunity to file a pro se petition for appeal independent of the petition filed by his second appellate attorney. [Dkt. No. 67] at 25.  Respondent contends that this claim is procedurally defaulted because the state trial court found during petitioner's habeas proceedings that Slayon v. Parrigan, 205 S.E.2d 680 (Va. 1974), barred the claim.[10]  [Dkt. No. 71] at 19.  Petitioner argues that the state habeas court improperly applied Slayton and that this claim should be entitled to de novo review by this Court.

The Court agrees that the trial court's application of Slayon does not require a finding that Claim I is procedurally barred.  As petitioner correctly observes, the state habeas court mistakenly concluded that this claim "allege[d] trial court error that could have been brought on direct appeal," [Rec. No. 95313 3/1/16 Order] at 7, as the facts underlying this claim took place during petitioner's direct appeal—not during trial—and petitioner's appellate counsel did not raise this point to the Supreme Court of Virginia.  Consequently, the Court is reluctant to find that Slayton, which bars habeas petitioners from bringing non-jurisdictional claims that could have been raised at trial or on direct review, Slayton, 205 S.E.2d at 682, bars this claim.

---

[10] The state trial court was the only state court to offer a reasoned analysis of Cavalieri's state habeas claims.  Indeed, as observed above, the Supreme Court of Virginia summarily denied Cavalieri's appeal of the trial court's decision to deny habeas relief.  In such a circumstance, a federal court must "look[] through" the Supreme Court of Virginia's refusal of the appeal and review the reasoning of the state trial court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (holding that a federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground"); Bennett v. Warden, No. 7:20cv198, 2021 WL 3408593, at *4 (W.D. Va. Aug. 4, 2021) (using the term "looks through" while employing reasoning of Ylst).  For ease of discussion, this Court will use the term "state habeas court" when referring to the state habeas proceedings.

De novo review of Claim I, does not save that claim because it does not make out a constitutional violation justifying habeas relief.  Indeed, a criminal defendant does not have "a constitutional entitlement to submit a pro se appellate brief on direct appeal in addition to the brief submitted by appointed counsel." McMeans v. Brigano, 228 F.3d 674, 684 (6th Cir. 2000). See also Myers v. Johnson, 76 F.3d 1330, 1335 (5th Cir. 1996) (because there is no constitutional right to hybrid representation, a criminal appellant "waives his right to present pro se briefs on direct appeal" by accepting the assistance of counsel); United States v. Ogbonna, 184 F.3d 447, 449 (5th Cir. 1999) (denying the defendant's motion to file a pro se brief on appeal from his federal convictions where his counsel had already filed a competent brief on his behalf); United States v. Gwiazdzinski, 141 F.3d 784, 787 (7th Cir. 1998) (declining to accept the defendant's pro se brief on appeal from his federal conviction, observing that a defendant "does not have an affirmative right to submit a pro se brief when represented by counsel").

Because Claim I fails to state any viable constitutional violation, it will be dismissed.  Cf. Dickinson v. Upchurch, No. 88-2803, 1989 WL 37293, at *1 (9th Cir. 1989) (affirming district court's ruling that "Arizona Court of Appeals' order denying [petitioner's] request to file a supplemental pro se brief" did not violate petitioner's constitutional rights).

## B.    Claims II, III & IV – Ineffective Assistance of Counsel

Claims II, III, and IV allege that petitioner received constitutionally deficient assistance of counsel, both at trial and on appeal.  See [Dkt. No. 67] at 30-122.  As an initial matter, although petitioner concedes in his opposition to the Motion to Dismiss that Claims III(B)(1), (2), (6), (8), (10), (11), and (12) have no individual merit, [Dkt. No. 76] at 3-4, he maintains that he "does NOT conceed [sic] th[ose] grounds … as they regard petitioner's [cumulative prejudice] claims" in Claims IV(A) and (B).  Id. at 4.  Additionally, petitioner explains that

21

Claim III(B) "was never a standalone claim" but is instead merely a heading to categorize the fourteen subclaims listed beneath it.    [Dkt. No. 76] at 26.  Consequently, this "claim" will not be addressed either with regard to procedural default or its merits.

      *1.*     *Exhaustion and Procedural Default: Claims III(B)(4), III(B)(5), and III(B)(14)*

      Respondent argues that Claims III(B)(4), III(B)(5), and III(B)(14)[11] are procedurally barred from federal review, [Dkt. No. 71] at 19-22; however, because petitioner asserts that these claims are "substantial" claims of ineffective assistance of counsel entitled to review under Martinez v. Ryan, 566 U.S. 1 (2012), the Court will, in a separate section, under the headings including the phrase "Martinez Analysis," assess their merits as though petitioner had satisfied all procedural requirements for review.

      *2.*     *Merits of Ineffective Assistance of Counsel Claims*

      To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense.  See, Strickland, 466 U.S. 668.  To satisfy the deficient performance prong, a petitioner must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance." Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted).  The prejudice component requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

---

[11] Respondent argues that additional subclaims were defaulted, but because petitioner concedes that several of those claims are without merit, those additional subclaims will not be addressed in this opinion.

"Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more difficult," Harrington v. Richter, 562 U.S. 86, 105 (2011).  Application of these two layers of deference effectively limits a federal court's review to a determination of "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

      a.    **Claim II**

In Claim II, petitioner generally alleges that his appellate counsel failed to raise meritorious legal issues and presented a statement of facts inconsistent with what truly occurred when law enforcement officials arrived at petitioner's home.  [Dkt. No. 67] at 30.  The state habeas court stated the following in denying this claim, which was presented to that court as Claim I:

> The court finds petitioner has failed to show deficient performance under Strickland.  Counsel's choice of which issues to raise on appeal is virtually unassailable.  See Jones v. Barnes, 463 U.S. 745 (1983) (counsel cannot be found ineffective for failing to raise every non-frivolous issue identified by a defendant); Townes v. Commonwealth, 234 Ca. 307, 320, 362 S.E.2d 650, 657 (1987) (appellate counsel decides what questions should be raised on appeal).
>
> This is true because "appellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).  "The attorney need not advance every argument, *regardless of merit*, urged by the appellant and must play the role of an active advocate." Fitzgerald, 6 Va. App. at 56, 366 S.E.2d at 625 (quoting Evitts v. Lucey, 469 U.S. 387, 394 (1985)) (emphasis added).  Counsel is not constitutionally obligated to raise every possible claim on appeal and a failure to do so does not render counsel's performance deficient.
>
> The court also finds petitioner has failed to prove prejudice, which in the context of an appeal, requires the petitioner to demonstrate a reasonable probability that the claims he asserts would have been successful on appeal.  See Williams v. Warden of Sussex I State Prison, 278 Va. 641, 648, 685 S.E.2d 674, 678 (2009)

(where counsel failed to preserve issue for appeal he was not ineffective where no reasonable probability of a different outcome had he done so).

Finally, the court rejects as baseless petitioner's claim that appellate counsel's statement of facts contained errors is not supported by the record. Petitioner does not point to actual errors, but instead disputes the factual findings made at the suppression hearing and at trial with his own version of events.

[Rec. No. 95313, 3/1/16 Order] at 13-14.

While the state court's decision was neither factually unreasonable nor contrary to federal law, petitioner's arguments are rambling and self-contradictory and do not undermine the validity of the state court's decision. For instance, petitioner asserts at the outset of this claim that Jones v. Barnes, 463 U.S. 745 (1983)—a case cited by the state habeas court—is "inapposite or inane to Petitioner's claim," [Dkt. No. 67] at 30-31, but he later cites the same case in support of his position, id. at 34.

Regardless of petitioner's contradictory assertions about its relevance, Jones clearly supports the reasonableness of the state court's finding. Here, petitioner faults appellate counsel for not raising arguments he believed to be meritorious. He goes so far as to state that he "demanded" his lawyer include certain arguments in her petition for appeal. See [Dkt. No. 67] at 32. But Jones makes clear that an indigent appellant has no "right to compel appointed counsel to press nonfrivolous points ... if counsel, as a matter of professional judgment, decides not to present those points." 463 U.S. at 751.

Petitioner also complains that appellate counsel did not inform him that she would not present the claims he wanted raised and that, if she had, he would have "motioned the court to ORDER a hybrid-representation of the pending appeal ... or [] would have moved to submit pro se." [Dkt. No. 67] at 32. Petitioner had no right to these remedies, and his arguments therefore fail. See Dickinson v. Upchurch, No. 88-2803, 1989 WL 37293, at *1 (9th Cir. Apr. 10, 1989)

24

(citing McKaskle v. Wiggins, 465 U.S. 168, 183 (1984)); Myers v. Johnson, 76 F.3d 1330, 1335

(5th Cir. 1996) (a criminal appellant "waives his right to present pro se briefs on direct appeal"

by accepting the assistance of counsel).

In short, the state habeas court's determination that appellate counsel was not ineffective

for failing to raise arguments and facts that petitioner wanted to assert was absolutely reasonable

because, "[f]or judges to second-guess reasonable professional judgments and impose on

appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve

the very goal of vigorous and effective advocacy." Jones v. Barnes, 463 U.S. 745, 754 (1983).

For these reasons, Claim II will be dismissed.

### b.      Claim III(A)

In Claim III(A), petitioner alleges that he was "denied a full and fair litigation of his 4th

amendment claim due to the errors of counsel." [Dkt. No. 67] at 44.  Respondent argues that, to

the extent Claim III(A) is a standalone claim it is unsupported by specific factual allegations and

therefore without merit, and to the extent it is a claim regarding the efficacy of petitioner's trial

counsel at the suppression hearing it is duplicative of Claim III(B)(3). [Dkt. No. 71] at 23.  In

his opposition to the Motion to Dismiss, petitioner appears to agree, at least partially, with

respondent's assessment, stating that the basis for this claim was "originally set forth in Claim

IX, grounds 3, 5, and 7 along with Claim VI and Claim III, as filed … with the state trial court."

[Dkt. No. 76] at 25.  The Court agrees with respondent that the claim is duplicative of others set

forth in the petition.  As a result, the Court will not treat Claim III(A) as a separate claim and will

instead examine the state court's treatment of petitioner's similar arguments, which are presented

in the federal petition as Claims III(B)(3), (5), and (7).

### c.     Claim III(B)(3)

In Claim III(B)(3), petitioner alleges that trial counsel "failed to competently and fully litigate the defendant's 4th amendment Illegal Search and Seizure claim during the Motion to Suppress." [Dkt. No. 67] at 73-74.  Petitioner argues that counsel should have:

- Obtained the recording of the 911 call he placed;

- Presented Mr. Brooks's statement corroborating petitioner's allegation that he summoned only an ambulance, not police, to his home;

- Argued that the sheriff's department's "CAD notes" refer to petitioner as "patient";

- Emphasized that Deputy Hill "left the defendant's condo for 10-20 minutes, then came back to 'guard the scene' … then 90 minutes later performed the illegal search";

- Effectively cross-examined Sgt. Cerniglia regarding her demand that Cavalieri put out his cigarette and her statement to Cavalieri that she was calling a CSI photographer to take pictures of the scene;

- "Identif[ied] that police had created, of their own accord, exigent circumstances to enter Cavalieri's condo";

- Established that the police performed a "no knock/no announce" entry; and

- Identified petitioner's  "long-standing depression AND hallucinations up to and on the day of his arrest." (emphasis in the original).

Id. at 73-76.  The state habeas court rejected this claim, holding:

> Petitioner has not established deficient performance.  Each of Petitioner's allegations … go toward trial counsel's tactical decisions in arguing the motion to suppress.
>
> Once petitioner determined to be represented by counsel, counsel took control over the presentation of the case, and it was for counsel to decide the best strategy at the suppression motion.  See Townes, 234 Va. At 320, 362 S.E.2d at 657; Spencer v. Commonwealth, 238 Va. 295, 303, 384 S.E.2d 785 (1989).  "Counsel is not ineffective merely because [s]he overlooks one [trial] strategy while vigilantly pursuing another."  Williams v. Kelly, 816 F.2d 939, 940 (4th Cir. 1987).  Tactical decisions, such as what issues to raise, lie solely within the province of counsel.  Jones, 463 U.S. at 751-52 (the "process of winnowing out weaker claims … is the hallmark of effective" advocacy).

26

It is plain from the record that trial counsel recognized the importance of whether petitioner consented to the search of his condominium; counsel vigorously argued that point. (Respondent's Exhibit H, 12/3/99 Tr. at 38-49; 12/11/99 Tr. at 12 (noting, "The defendant here makes a strong argument based upon several things")).

But, trial counsel did not limit her argument to just the issue of consent. Instead, trial counsel maintained law enforcement had no authority under any theory to conduct a search of petitioner's condominium. (12/3/09 Tr. at 40-59). Trial counsel further emphasized during the evidentiary hearing on the motion to suppress that petitioner's 9-1-1 call was recorded by dispatch as a self-inflicted shooting or stabbing and a suicide attempt, and argued that police did not therefore have probable cause to enter the condominium. (11/4/09 Tr. at 36-39, 51-52, 84-88).

However, after hearing the testimony of the responding officers and petitioner, the court found as a fact that petitioner expressly consented to the search of his condominium. (12/11/09 Tr. at 24-34). The search was justified under the Fourth Amendment, and the motion to suppress was denied. (12/11/09 Tr. at 34). Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful. See James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996)

Nor has petitioner established Strickland prejudice. Petitioner has not shown that, had trial counsel taken the actions he lists in his petition, the outcome of the suppression hearing would have been different. Nothing petitioner has argued on habeas changes the central fact found by the Court: that he consented to the search of his condominium.

[Rec. No. 95313, 3/1/16 Order] at 30-32.

These findings are neither contrary to federal law nor based on an unreasonable interpretation of the facts. As the state habeas court indicated, an attorney's decision to elicit facts supportive of one theory of relief at the expense of another is not the sign of a poor or ineffective advocate. See Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."). "Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. Accordingly, Claim III(B)(3) will be dismissed.

      d.     **Claim III(B)(4) – <u>Martinez</u> Analysis**

      In Claim III(B)(4), petitioner alleges that trial counsel improperly "allowed the Commonwealth to infer the victim died as a result of strangulation by twine (use of a deadly weapon). She did not Motion to Strike or Object to Strike." [Dkt. No. 67] at 76. Petitioner argues that the medical examiner "specifically testified the twine did not cause [the victim's] death" and that the Commonwealth's argument to the contrary was thus "an evidentiary baseless theory." <u>Id.</u> at 76-77. The state habeas court found that this claim was barred by Va. Code § 8.01-654(B)(2) because petitioner had not raised it in his original habeas petition. [Rec. No. 85313, 3/1/16 Order] at 21. Petitioner argues that he is entitled to review of the claim under <u>Martinez</u>. [Dkt. No. 67] at 49-50.

      Claim III(B)(4) has no merit. Contrary to petitioner's description of the trial evidence, the medical examiner *did not* conclusively state whether the victim died as a result of manual or ligature strangulation. Instead, when he testified on February 4, 2010, he explicitly stated, "There is no question that [the victim] was strangled and that is the cause of her death, but I didn't find specific evidence that pointed to one particular modality." [2/4/10 Trial Tr.] at 180-81. Moreover, petitioner admitted having used twine to silence the victim's "gurgling," although he also stated that he believed she was deceased at that time. [6/3/09 Tr.] at 6. On this record, Cavalieri's assertion that the prosecution's theory was unsupported by any evidence fails.

      Although counsel did not move to strike evidence of petitioner's use of twine, she elicited useful testimony during cross-examination and drew on that testimony during closing arguments in an effort to prevent the jury from accepting the Commonwealth's theory. For instance, she got the medical examiner to agree that a fractured hyoid bone—which the victim suffered—was more likely to have resulted from manual strangulation, rather than strangulation with a rope or

other item.  [2/4/10 Trial Tr.] at 178.  The medical examiner also agreed with counsel that the marks present on the victim's neck were not necessarily ligature marks but could have been the result of the victim's partial decomposition.  [2/4/10 Trial Tr.] at 179.

Trial counsel's decision to elicit testimony through which she might undermine the Commonwealth's "twine theory"—rather than objecting to the invocation of the theory  in the first place—was an appropriate defense strategy.  Cf. Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 562 (4th Cir. 1999) (counsel's failure to object at trial to the testimony of an eyewitness was not objectively unreasonable because counsel may have preferred cross-examination to exclusion of the witness); Lambert v. McBride, 365 F.3d 557, 564 (7th Cir. 2004) ("[T]here may very well be strategic reasons for counsel not to object" to certain testimony, including a desire to "avoid calling attention to the statements and thus giving them more force.")

For these reasons, Claim III(B)(4) does not raise a substantial claim of ineffective assistance of counsel and will be dismissed.

e.      **Claim III(B)(5) – _Martinez_ Analysis**

In Claim III(B)(5), petitioner faults trial counsel for failing to object to the prosecution's proffer that the petitioner "was pacing back and forth behind the couch," arguing that the characterization of him "pacing" was the basis of the Commonwealth's argument for premeditation and was based on "a complete misrepresentation of testimony and facts" and that there was "NO Evidence AT ALL" from which the jury could have inferred premeditation. [Dkt. No. 67] at 50, 77.  Like Claim III(B)(4), the state habeas court found that this claim was barred by Va. Code § 8.01-654(B)(2) because petitioner had not raised it in his original habeas petition.  [Rec. No. 85313, 3/1/16 Order] at 21.  Petitioner argues that he is nevertheless entitled to review of the claim under Martinez.  [Dkt. No. 67] at 50-51.

Claim III(B)(5) lacks merit for several reasons. First, contrary to plaintiff's claim, the record contains evidence of petitioner's pacing. Specifically, in his statements to law enforcement officials, which he made after being informed of his Miranda rights, petitioner stated that during the incident he was "pacing back and forth behind the couch," that he "walked behind the couch," and that he "pulled [the victim] over the couch." [2/4/10 Trial Tr.] at 259, 265. Consequently, there is no legitimate objection that counsel could have raised to the prosecution's use of the term "pacing." The failure to make what would have been a futile objection is not evidence of ineffective assistance. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) ("Counsel is not required to engage in the filing of futile motions.").

The record also makes clear that counsel made a legitimate effort during closing arguments to reframe petitioner's "pacing" as proof that he acted in the heat of passion, as opposed to proof that his act was premeditated. Counsel added context to her argument by emphasizing to the jury that petitioner also stated, "I didn't—when I walked behind that couch, I did not intend on killing her." Id. at 259. This argument was consistent with counsel's trial strategy, and counsel's strategic decisions are given significant deference. Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (observing that there is a "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance") (internal quotations omitted).

Finally, there was abundant evidence produced during the trial from which the jury could have inferred petitioner's premeditation without considering petitioner's "pacing." For example, the jury heard that petitioner and the victim had been fighting and that petitioner had been frustrated at how "self-righteous" the victim had been. [2/4/10 Trial Tr.] at 258. The Commonwealth also presented numerous emails from which the jury could infer that petitioner

30

and the victim had a tumultuous relationship.  See, e.g., [2/4/10 Trial Tr.] at 53-99.  From these

pieces of evidence, a jury could reasonably infer that petitioner acted in a premeditated fashion

when he killed Harper.  Claim III(B)(5) is thus not a "substantial" claim of ineffective assistance

entitling petitioner to relief, and for these reasons will be dismissed.

      **f.**    **Claim III(B)(7)**

      In Claim III(B)(7), petitioner alleges that "counsel failed to prepare, was negligent, was

deficient in not properly preparing and investigating defendant's case."  [Dkt. No. 67] at 80.  He

identifies several perceived deficiencies, including counsel's failure to obtain a trasncript of

petitioner's original 911 call, see id. at 81, failure to "clarify facts before the motion to suppress

hearing," see id., and failure to "meet with [petitioner] enough to gather needed facts and

information to present an adversarial case against the prosecution," see id. at 63.  The state

habeas court reviewed and denied this claim, writing:

> The court finds that petitioner has not established deficient performance.  "[T]here
> is no established 'minimum number of meetings between counsel and client prior
> to trial necessary to prepare an attorney to provide effective assistance of
> counsel.'"  Moody v. Polk, 408 F.3d 141, 148 (4th Cir. 2005) (quoting United
> States v. Olson, 846 F.2d 1103, 1108 (7th Cir. 1988)).  Instead, "counsel has a
> duty to make reasonable investigations or to make a reasonable decision that
> makes particular investigations unnecessary."  Strickland, 466 at 691.
>
> A reasonably competent defense attorney, faced with the evidence of petitioner's
> guilt, including his video-taped confession to law enforcement, could have
> concluded that viewing the over six-hours of video of petitioner's interview with
> law enforcement with petitioner would be unfruitful.  Or, trial counsel may have
> faced difficulty regarding the availability of video equipment at the facility where
> petitioner was housed awaiting trial.
>
> More importantly, a reasonably competent defense attorney could conclude
> petitioner's theories regarding Officer Coderre's statement that petitioner "paced
> back and forth behind the couch" and petitioner's "prolonged martial arts training
> creat[ing] muscle-memory-movement even in a drunken black-out stupor" were
> not viable defense strategies in light of petitioner's statement to law enforcement.
> (Petition at 57).  See Bullock, 297 F.3d at 1047 (holding trial counsel's
> "deficiency will not be found where fully informed and competent 'hypothetical

31

counsel' could have taken the same action"). Finally, trial counsel did not have a
duty to follow petitioner's directive in developing a defense; rather, the
development of the best theory of defense is counsel's prerogative. See Townes,
234 Va. at 320, 362 S.E.2d at 657.

The court further finds petitioner has also failed to establish Strickland prejudice
on this record. Given the overwhelming evidence of petitioner's guilt, including
his confession that he murdered Harper by strangling her and then concealed her
body in the child's bedroom for two weeks, petitioner has not shown that, had
trial counsel taken the actions he insists she should have, the outcome of this trial
would have been different.

[Rec. No. 95313, 3/1/16 Order] at 38-40.

The state court's decision with respect to this claim was neither unreasonable nor

contrary to federal law. Indeed, this claim is at least partially duplicative of Claim III(B)(3) in

that it faults counsel for what petitioner deemed to be inadequate preparation for, or performance

at, the motion to suppress hearing. As previously discussed, this claim has no merit.

Even to the extent this claim differs from Claim III(B)(3), the state court accurately

recounted facts from the record and applied relevant law. As has been discussed at length in this

opinion, defense attorneys have "wide latitude ... in making tactical decisions," see Cullen v.

Pinholster, 563 U.S. 170, 195-96 (2011), and it is clear that counsel's decisions in this case were

sound, even if they were unsuccessful in earning petitioner an acquittal. During the suppression

hearing, counsel convinced the trial judge that several of the prosecution's theories justifying the

search were without legal basis, and during trial, counsel presented a competent defense despite

petitioner having admitted to killing the victim. Claim III(B)(7) will therefore be dismissed.

### g.    Claim III(B)(9)

In Claim III(B)(9), petitioner alleges that trial counsel "denied petitioner his compulsory

process right to call witnesses in his favor." [Dkt. No. 67] at 84. In his state habeas petition,

Cavalieri identified these witnesses as supermarket employees who would have testified to his

routine alcohol purchases and neighbors who would have testified that "the Defendant and Victim were a normal, mostly happy couple." [Rec. No. 93513, 2015 Habeas Pet'n] at 59-59(a). The state habeas court denied this claim on the basis that petitioner did not "proffer[] affidavits from the[] witnesses containing the testimony they would have given at trial." [Rec. No. 95313, 3/1/16 Order] at 22. "This failure to proffer," the state court held, was "fatal to [petitioner's] claim." Id. (citing Muhammad v. Warden of Sussex I State Prison, 274 Va. 3 (2007)).

This decision was neither factually unreasonable nor contrary to federal law. Cf. Swinson v. Dir. Dep't of Corrs., No. 3:14cv100, 2015 WL185951, at * 13-14 (E.D. Va. Mar. 13, 2015) (discerning "no unreasonable application of the law" where state court cited Muhammad to deny ineffective assistance claim after petitioner failed to produce affidavit establishing what testimony would have been); Franklin v. Dir., Va. Dep't of Corrs., No. 1:13cv265, 2013 WL 5883874, at *3 (E.D. Va. Oct. 31, 2013) (same).

Although petitioner argues that the state court possessed evidence—namely statements to police—that "contained what the testimony [of other witnesses] would have been" and "how it would have either contradicted the prosecution's theories and statements or mitigated their evidence," [Dkt. No. 67] at 64, this Court cannot second guess the state court's application of state law, which requires the proffer of affidavits in support of a claim like petitioner's. See Woodfolk v. Maynard, 857 F.3d 531, 543 (4th Cir. 2017) ("A federal habeas court does not have license to question a state court's finding of procedural default or to question whether the state court properly applied its own law.").

Moreover, trial counsel's decision not to call a witness on a petitioner's behalf is entitled to "enormous deference." See Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("[C]alling some witnesses and not others is the epitome of a strategic decision.");

United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994) (decision not to call witness entitled

to "enormous deference" and decision was objectively reasonable in any event).  For all these

reasons, Claim III(B)(9) will be dismissed.

> **h.    Claim III(B)(13)**

In Claim III(B)(13), petitioner alleges that counsel refused to allow him to testify, which

he believes was a violation of his constitutional rights.  [Dkt. No. 67] at 93-96.  The state habeas

court found that petitioner failed to satisfy his burden with respect to this claim, writing:

> First, petitioner has not proffered what his testimony would have been in the trial
> court.  Petitioner's statements in relation to Harper's murder were already before
> the Court in the form of his statements to law enforcement, including his
> confession to murdering Harper.  Petitioner has not proffered that his testimony
> would have differed from his confession.  This failure is fatal to his Strickland
> claim.  See Muhammad, 274 Va. at 18, 646 S.E.2d at 195.
>
> Second, petitioner has provided no evidence supporting his conclusory claim that
> counsel "refused" to allow him to testify against his wishes, beyond his own self-
> serving statements.  See Hedrick, 264 Va. at 251, S.E.2d at 862.
>
> Third, petitioner's claim that counsel "refused to let" him testify because she was
> unprepared lacks legal merit.  Competent defense counsel can reasonably
> determine that a witness, who is telling the truth, does not need preparation before
> taking the stand.  See Clozza v. Murray, 913 F.2d 1092, 1101 (4th Cir. 1990)
> (trial counsel who stated that "he does not normally prepare clients for cross-
> examination, believing with reason that a witness who is not lying will not be
> tripped up" was not ineffective when habeas petitioner told a different version of
> events on the witness stand that he had previously given counsel).  Petitioner does
> not have the right to have counsel assist him in concocting a lie.  See id.
>
> And, fourth, while the right to testify at trial cannot be waived by defense counsel,
> "if counsel believes that it would be unwise for the defendant to testify, counsel
> may, and indeed should, advise the client *in the strongest possible terms not to
> testify*."  United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992)
> (emphasis added).  Thus, "[a]bsent evidence of coercion, legal advice concerning
> the defendant's right to testify does not constitute ineffective assistance of
> counsel."  Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002); see also Jones v.
> Murray, 947 F.2d 1106, 1116 n.6 (4th Cir. 1991) (reiterating principle that advice
> to testify is paradigmatic of strategic decision).  Had petitioner testified at trial, he
> would have been subject to cross-examination.  A competent defense attorney,
> faced with the evidence of petitioner's guilt, including his statements to law

enforcement, could reasonably conclude that exposing petitioner to long and detailed cross-examination would be an imprudent defense strategy.

[Rec. No. 95313, 3/1/16 Order] at 40-42.

This determination was neither unreasonable nor contrary to federal law.  Petitioner strongly protests the characterization that counsel merely discouraged him from testifying and asserts that they prohibited him from taking the witness stand, but petitioner's own testimony before he was sentenced undercuts that position.  In a statement offered to the trial court and the victim's family, petitioner mentioned that he wanted to testify on his own behalf, "but was told not to."  [5/18/10 Trial Tr.] at 43.  In this light, the state court's analysis and invocation of Teague were unquestionably on point because the record shows that petitioner was merely "told"—in in other words, he was advised—not to testify and was not prohibited from doing so.

The state court also correctly identified that petitioner failed to identify what his testimony would have been.  Instead, Cavalieri made conclusory statements in his original habeas petition, stating that he "was well aware of the inconsistencies and false statements of the Commonwealth, combined with the several key elements of the Commonwealth's case that were simply wrong," [Rec. No. 73225, 2012 Habeas Pet'n] at 22.  Cavalieri's failure to provide any specific information regarding what elements of the Commonwealth's case he would have targeted or what testimony he would have offered to challenge those elements justified the state court's denial of this claim, which this Court will also dismiss.

### i.    Claim III(B)(14) – Martinez Analysis

Finally, in Claim III(B)(14), petitioner alleges that trial counsel "did not competently litigate defendant's search warrant at the Franks motion in violation of his [constitutional] rights."  [Dkt. No. 67] at 97.  The state habeas court did not address this claim, perhaps because, although petitioner raised a generalized Franks claim in his state habeas petition, he never

35

framed that argument as an ineffective assistance of counsel claim. See [Rec. No. 95313, 2015 Habeas Pet'n] at 47-48. Nevertheless, because petitioner invokes Martinez, this Court must consider whether it is a substantial claim of ineffective assistance of counsel.

Petitioner's federal petition does not develop this argument to any extent, and the section of the state petition to which he makes reference does not present the claim as an ineffective assistance claim. Consequently, it is difficult to determine any specific factual basis for the claim. Viewed from a broad perspective, though, it is quite clear that counsel did not act deficiently.

As respondent observes, trial counsel put forth a significant defense of petitioner's Fourth Amendment rights at the November 4, 2009 suppression hearing, ultimately persuading the trial judge that several of the Commonwealth's proffered justifications for the search of petitioner's home were not valid. See [12/11/09 Tr.]. Ultimately, however, the trial court concluded that petitioner consented to the search of his home and therefore denied the motion to suppress. Id. Undaunted, counsel filed a secondary motion—a Franks motion—arguing that the search warrant affidavit was dishonest in that it misrepresented the time law enforcement first discovered Harper's body. [1/20/10 Tr.]. The trial court denied the motion on two grounds: because it found that petitioner's consent to the search of his home "rendered any other issue with respect [to the search] moot," see [1/20/10 Tr. at 29], and because, even ignoring the portions of the affidavit the defense contended were dishonest, the affidavit still established probable cause to justify issuance of the warrant, see id. at 29-30.

Although defense counsel's strategy did not prevail, this is not evidence that her efforts constituted ineffective assistance. See Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995) ("We emphasize ... that neither Bell nor any other aggrieved defendant can manipulate this forum to

construe a reasonable but ultimately unsuccessful strategy in his favor.  Standing alone, unsuccessful trial tactics neither constitute prejudice nor definitely prove ineffective assistance of counsel."); Bennett v. Angelone, 92 F.3d 1336, 1349 (4th Cir. 1996) (finding that rational, if imperfect, trial strategy is not ineffectiveness).  For these reasons, Claim III(B)(14) is not a substantial claim of ineffective assistance of counsel entitling petitioner to relief and will be dismissed.

> **j.    Claims IV(A) and IV(B)**

In Claims IV(A) and IV(B), petitioner alleges that the "cumulative effect and aggregate prejudice" of counsel's alleged ineffectiveness violated his rights.  [Dkt. No. 67] at 98-122.  The state habeas court rejected this argument pursuant to Slayton, as conclusory, and because Virginia does not recognize "aggregate prejudice" claims.  See [Rec. No. 95313, 3/1/16 Order] at 18-19.  Petitioner strongly contests these findings and urges this Court to conduct a de novo review based on the state court's decision to "pass[] upon" considering the merits of this claim. [Dkt. No. 67] at 102.

Even if this Court were to agree with petitioner that the state court "passed upon" these arguments, petitioner would not be entitled to relief in federal court because he has not identified a single instance of ineffective assistance of counsel, and an attorney's "acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'"  Fisher v. Angelone, 163 F.3d 835, 832-53 (4th Cir. 1998) (quoting Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)).  For this reason, Claims IV(A) and IV(B) will be dismissed.

C.     **Claim V – Alleged *Napue* Violation**

In Claim V, petitioner alleges that the prosecution team violated his rights by knowingly

offering false statements and perjured testimony into evidence.  See [Dkt. No. 67] at 123-130.

Respondent asserts that this claim is procedurally defaulted because the state habeas court held it

was barred by Slayton.  [Dkt. No. 71] at 19.

Petitioner offers two theories to overcome the procedural default: first, that failure to

consider this claim on its merits would result in a fundamental miscarriage of justice, [Dkt. No.

67] at 123, and second, that the default was caused by the ineffective assistance of his appellate

counsel, [Dkt. No. 76] at 29-30.  Neither argument is persuasive.

First, a fundamental miscarriage of justice exists only if "a constitutional violation has

probably resulted in the conviction of one who is actually innocent of the substantive offense."

Dretke v. Haley, 541 U.S. 386, 393 (2004) (internal quotation marks and citation omitted).  To

make that showing, a habeas petitioner must "support his allegations of constitutional error with

*new reliable evidence* … that was not presented at trial."  See Schlup v. Delo, 513 U.S. 298, 324

(1995) (emphasis added); see also Hayes v. Carver, 922 F.3d 212, 216 (4th Cir. 2019).  Here,

Cavalieri has not presented any new reliable evidence.  Instead, he offers Appendices E and F, as

well as Exhibits 1-34, which he claims reveal eighty-four "impeachable testimonial statements."

[Dkt. No. 76] at 30.  This evidence is not new; it consists primarily of suppression hearing

transcripts that Cavalieri has annotated to indicate testimony he believes was factually

inconsistent or fabricated.  [Rec. No. 95313] at 763-932.  Moreover, petitioner's concession that

this evidence merely offers a basis on which several witnesses might have been impeached

undermines his argument, as impeachment evidence does not establish "factual innocence."  See

Bousley v. United States, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that

38

"actual innocence" means factual innocence, not mere legal insufficiency."); <u>Calderon v. Thompson</u>, 523 U.S. 538, 560-61 (1998) (observing that impeachment evidence "is a step removed from evidence pertaining to the crime itself").

Petitioner's reliance on <u>Martinez</u> to support an ineffective assistance of appellate counsel theory fails because "the explicit language of <u>Martinez</u> applies to an inmate's default of a claim of ineffective assistance of <u>trial</u> counsel only." <u>Kelly v. Va. Dep't of Corrs.</u>, No. 3:19cv212, 2020 WL 5834257, at *6 n.5 (E.D. Va. Sept. 30, 2020) (citing <u>Gaither v. Zook</u>, No. 3:16cv64, 2017 WL 561809, at *4 (E.D. Va. Jan. 18, 2017). There is, therefore, no support for the argument that ineffective assistance of *appellate* counsel constitutes a cognizable cause for Cavalieri's default of Claim V.

Although the procedural default is a sufficient basis to dismiss Claim V, petitioner's <u>Napue</u> arguments also fail on the merits. As explained by the state court:

> In any event, the court finds that petitioner's <u>Napue</u> claim is without merit. As noted above, petitioner relies on Coderre's preliminary hearing testimony that was never heard by the jury; instead, the jury watched the recording of petitioner's confession. Next, Petitioner provides no evidence, other than his own self-serving statements that were rejected by this Court as incredible at the suppression hearing, to support his claim that he did not consent to the search of his condominium. And, petitioner's claim that he expressly summoned an ambulance only, rather than police, when he called 9-1-1 to report that he was suffering from stab wounds, is without merit.

[Rec. No. 95313, 3/1/16 Order] at 8, n.2.

This determination was neither contrary to federal law nor based on an unreasonable determination of the facts. Much of the basis for the alleged <u>Napue</u> violations petitioner describes—such as, an investigator's statements during a preliminary hearing—occurred outside the presence of the jury that convicted Cavalieri, and a <u>Napue</u> violation occurs only if "the false

39

testimony *could have affected the judgment of the jury*." United States v. Agurs, 427 U.S. 97, 103 (1976) (emphasis added).

The other testimony petitioner describes as having violated Napue dealt with whether petitioner truly consented to law enforcement officials searching his home. See [Dkt. No. 67] at 127 ("The Commonwealth made false statements and misrepresented Cavalieri's call to 9-1-1 as being a call in which the defendant 'summoned' authorities. This is false; the prosecution … knew it was a false statement and it [was] material and dispositive to the Motion to Suppress."). The legitimacy of the search was not an issue the jury was tasked with deciding. Instead, as petitioner conceded, that was a purely legal issue decided by the trial judge before the actual trial occurred. Because this information did not—and could not—"affect[] the judgment of the jury," see Agurs, 427 U.S. at 103, there was no Napue violation. For these reasons, Claim V will be dismissed.

## V.  Conclusion

For the reasons stated above, respondent's Motion to Dismiss will be granted by an Order accompanying this Memorandum Opinion.

Entered this __19th__ day of December 2022.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

40